UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADRIANNE GARDNER-KEEGAN, SCOTT
A. NORMAN, and ALISON DELA RIVA,
individually, and as Representatives of a Class
of Participants and Beneficiaries of the W.W.
Grainger, Inc. Retirement Savings Plan,

        Plaintiffs,

        v.

W.W. GRAINGER, INC., BOARD OF
DIRECTORS OF W.W. GRAINGER, INC.,
and W.W. GRAINGER, INC., PROFIT
SHARING INVESTMENT COMMITTEE,

        Defendants.

Case No. 1:25-cv-5233

Class Action Complaint Under
29 U.S.C. § 1132(a)(2)

# COMPLAINT

Plaintiffs Adrianne Gardner-Keegan, Scott A. Norman, and Alison Dela Riva ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of the W.W. Grainger, Inc. Retirement Savings Plan ("Plan" or "WWG Plan"), by their counsel, WALCHESKE & LUZI, LLC, allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

1.      401(k) defined contribution plans such as the WWG Plan have become America's primary retirement savings vehicle. As with all defined contribution retirement plans that require participants to bear the costs of plan administration, the Plan participants' retirement savings suffer when the Plan fiduciaries mismanage plan assets, when employers use Plan assets for their own benefit, or pay excessive plan recordkeeping and administrative ("RKA") fees.

2.     Defendants W.W. Grainger, Inc. ("WWG"), the Board of Directors of W.W. Grainger, Inc., and W.W. Grainger, Inc. Profit Sharing Investment Committee ("Plan Committee") (collectively, "Defendants"), utilized the Plan's forfeitures, a type of plan asset to benefit themselves by reducing their future employer contributions to the Plan, violating ERISA's fiduciary duties of loyalty and prudence, as well as the fiduciary and party-in-interest prohibited transaction rules.

3.     Plaintiffs, current and former participants in the WWG Plan, bring this ERISA action in a representative capacity on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2), and under Fed. R. Civ. P. 23. as representatives of a class of participants and beneficiaries of the WWG Plan, against Defendants for breaches of the duties of loyalty and prudence, as well as for fiduciary and parties-in-interest transactions prohibited by ERISA.

4.     The allegations in this complaint contend that Plan forfeitures should have been used to pay Plan expenses instead of employer contributions. The allegations do not concern the compensation received by the Plan's service providers and investment advisors or that the Plan Committee selected imprudent Plan investments.

5.     Plaintiffs' claims are brought on behalf of the Plan and seek equitable remedies for losses suffered by the Plan under 29 U.S.C. §§ 1132(a)(2) and 409(a).

6.     More specifically, and as set forth in more detail below, Plaintiffs allege that Defendants: (a) improperly utilized forfeited Plan assets to disloyally reduce future employer contributions for their own selfish interests; (b) did not engage in a prudent process when deciding to use Plan forfeitures for the employer's own benefit rather than to reduce Plan expenses; (c) failed to followed the Plan document by prioritizing paying Plan administrative expenses; (d) failed to monitor those responsible on the Plan Committee for allocation of Plan forfeitures; (e) engaged in party-in-interest fiduciary prohibited transactions by enriching themselves through Plan forfeitures; and (f) engaged in fiduciary prohibited transactions by favoring their own accounts with Plan forfeitures.

## JURISDICTION AND VENUE

7.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this is an action under 29 U.S.C. §§ 1132(a)(2) and (3) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

8.     This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

9.     This district is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred here

## PARTIES AND THE PLAN

10.     W.W. Grainger, Inc. ("WWG"), is an American Fortune 500 industrial supply company that serves more than 4.5 million customers worldwide with products such as motors, lighting, material handling, fasteners, plumbing, tools, and safety supplies, along with inventory management services and technical support. Grainger serves its customers through a network of approximately 331 branches, online channels, and 34 distribution facilities. The headquarters are located at 100 Grainger Pkwy, Lake Forest, IL, 60045.

11.     The WWG Plan is a defined contribution employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).

12.     WWG is the Plan's sponsor under 29 U.S.C. § 1002(16)(B).

13.     As required by 29 U.S. C. § 1102(a)(1), the Plan is established and maintained by a written plan document, the W.W. Grainger, Inc. Retirement Savings Plan, As Amended and Restated, Effective January 1, 2021 ("Plan document").

14.     Under Section 14.4 of the Plan document,, Defendant WWG, through its Board of Directors, has the authority to determine the number of members on Plan Committee, and to appoint and remove those Committee members. In this role, Defendant WWG, through its Board

of Directors, acted in a fiduciary capacity and had the responsibility to monitor those on the Plan Committee responsible for the loyal and prudent allocation of Plan forfeitures.

15.     The Plan Committee is the Plan's administrator within the meaning of 29 U.S.C. § 1002(16)(A), and the Committee is a fiduciary for the Plan. In addition, the members of the Committee (the Plan Committee Members) are also fiduciaries for the Plan. "[W]here, as here, a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by the company." *See Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1156 (9th Cir. 2000).

16.     Defendants chose The Vanguard Group, Inc. ("Vanguard") to provide Plan recordkeeping and administrative services during the Class Period.

17.     Plaintiff Adrianne Gardner-Keegan is a resident of Jessup, Pennsylvania. Plaintiff Gardner-Keegan worked for WWG from April 2019 to November 2024 as a remote Field Account Representative. Plaintiff Gardner-Keegan is a current participant in the WWG Plan.

18.     Plaintiff  Scott A. Norman is a resident of Dunwoody, Georgia. Plaintiff Norman worked for WWG from May 2007 until November 2021. He was a public sector  account manager at WWG's Raleigh, NC location. Plaintiff Norman is a current participant in the WWG Plan.

19.     Plaintiff Alison Dela Riva is resident of Olive Branch, Mississippi. Plaintiff Dela Riva was employed by WWG from Aug 26, 2017 to October 30, 2024, in the Chicago area, working inside sales from 2017 to 2020 and as a manufacturing account manager from 2020-2024. Plaintiff Dela Riva rolled out of the Plan in or around December 2024.

20.     Plaintiffs have Article III standing to bring this action on behalf of the WWG Plan because they suffered actual injuries to their Plan accounts by not having forfeited Plan assets reallocated to their Plan accounts as a result of WWG reducing employer contributions for their own benefit. Those injuries are fairly traceable to Defendants disloyally and imprudently using Plan forfeitures for their own benefit to reduce their future contributions to the WWG Plan. Finally,

these injuries diminished the savings in Plaintiffs' retirement accounts in the Plan and reduced, dollar for dollar (and more when compounded) Plaintiffs' retirement savings.

21. Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

22. The Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, the misuse and misallocation of Plan forfeitures) necessary to understand that Defendants breached their fiduciary duties and engaged in prohibited transactions until shortly before this suit was filed.

23. Having never managed a very large 401(k) Plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of the misuse and misallocation of Plan forfeitures.

24. With 30,294 participants and $3,454,221,802 in assets under management as of December 31, 2023, the WWG Plan is one of the larger retirement plans in the country. It ranks in the top 0.01% of over 730,629 retirement plans in terms of the number of participants and the top 0.01% of plans in terms of the value of its assets.

## ERISA FIDUCIARY AND PROHIBITED TRANSACTION STANDARDS

25. ERISA exists, in large part, to protect the interests of participants, and their beneficiaries, in employee retirement plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)).

26. "[A]ny person who exercises discretionary authority or control in the management or administration of an ERISA plan" is, under the statute's terms, a fiduciary. *See Barchock v. CVS Health Corp.,* 886 F.3d 43, 44 (1st Cir. 2018) (citing 29 U.S.C. § 1002(21)(A)).

27. ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the WWG Plan, that are covered by ERISA.

28. ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i)

providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

29.     Additionally, ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

30.     These fiduciary duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

31.     The continuing duty to monitor is a subset of the duties of loyalty and prudence, *Tibble v. Edison Int'l*, 575 U.S. 523, 529–30 (2015), and requires a plan fiduciary to "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." *See Hughes v. Northwestern University*, 63 F.4th 615, 626 (7th Cir. 2023) ("*Hughes II*") (quoting RESTATEMENT (THIRD) OF TRUSTS § 90(c)(3)).

32.     The inquiry into the duties of loyalty and prudence is "context specific." *Id*. at 93.

33.     Defendants are ERISA fiduciaries as they exercise discretionary oversight, authority, or control over the WWG Plan that it sponsors and provides to its employees.

34.     Defendants failed to fulfill their duty to loyally and prudently control the manner in which forfeitures were utilized by the Plan.

35.     WWG is a party-in-interest because it is an employer "any of whose employees are covered by such plan." *Id.*, § 1002(14)(C).

36.     Moreover, because Defendants are fiduciaries of the Plan and "deal[t] with the assets of the plan in [their] own interest or for [their] own account," they violated the fiduciary duty of loyalty and engaged in prohibited transactions under both 29 U.S.C. § 1106(a)(1)(D) and

29 U.S.C. § 1106(b)(1), by benefiting themselves as far as reducing their own future contributions to the WWG Plan.

<b><u>FACTUAL ALLEGATIONS</u></b>

**A.**　　**<u>WWG's Disloyal, Imprudent, and Prohibited Uses of Plan Forfeitures.</u>**

37.　　The WWG Plan is funded by a combination of wage withholdings by Plan participants and Company contributions, each of which is deposited into the Plan's trust fund.

38.　　In accordance with 29 U.S.C. § 1103(a), the assets of the WWG Plan are held in a trust fund. Upon their deposit into the Plan's trust fund, all participant contributions and WWG contributions become ***assets of the Plan***.

39.　　The fiduciary duties of prudence and loyalty, as well as the duty to refrain from self-dealing, under ERISA, are violated where, as here, the employer (1) is both the plan sponsor and plan administrator; (2) is faced with a conflict of interest in choosing between allocating plan assets toward offsetting its own contributions to the plan or defraying plan expenses that would otherwise be borne by plan participants; (3) fails to conduct any investigation as to which choice would be in the best interest of the participants; (4) acts contrary to the express provisions of the Plan; and (5) decides to allocate all or a portion of those plan assets toward reducing its own plan contributions because that choice best serves its own interests.

40.　　Plaintiffs were all "participants" in a defined-contribution plan under ERISA Section 3(7), 29 U.S.C. § 1002(7), during the Class Period: the WWG Plan.

41.　　As an individual account, defined contribution retirement plan, the WWG Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

42.     Starting for Plan years starting in 2016 and ending in 2020, under Section 8.3B of the Plan document, "a Participant's Profit Sharing Account shall become vested in accordance with the following schedule," [setting forth a five-year cliff vesting schedule].

43.     Forfeitures are the nonvested portion of a participant's account that is lost upon termination of employment.

44.     The WWG Plan gave the Plan Committee a discretionary choice about how to use the forfeitures each year.

45.     More specifically, Section 8.4 of the Plan document ("Forfeitures") states as follows in pertinent part:

> **8.04. Forfeitures**. Forfeiture Account amounts shall be utilized to pay reasonable administrative expenses of the Plan and to restore Accounts for a Plan Year, **as directed by the Committee**, and then (i) for Plan Years prior to the 2016 Plan Year, to increase the amount allocated as Company Profit Sharing Contributions for that Plan Year, (ii) beginning with the 2016 Plan Year, to offset Company Profit Sharing Contributions, and (iii) beginning with the 2021 Plan Year, to offset Company Contributions (aka Safe Harbor Company Contributions)." (emphasis added).

46.     In other words, the Plan Committee had to "pay reasonable administrative expenses of the Plan" before "then . . .  (ii) beginning with the 2016 Plan Year, to offset Company Profit Sharing Contributions, and (iii) beginning with the 2021 Plan Year, to offset Company Contributions (aka Safe Harbor Company Contributions)."

47.     The Plan Committee violated their fiduciary duties one of two ways: (1) by failing to follow the Plan document language and paying reasonable administrative expenses first **before** offsetting their own contributions to the Plan; and (2) to the extent that forfeiture decisions involved Plan committee discretions, favoring WWG own interest over those of Plan participants.

48.     In 2019, the Financial Statement Notes attached to the 2019 Form 5500 (page 31 of 3) states: "The **forfeiture account amounts are utilized to pay reasonable administrative expenses of the Plan**, and to restore accounts for a plan year or to offset Company profit sharing contributions. Unallocated forfeiture balances as of December 31, 2019 and 2018, were $3,720,905 and $2,652,075, respectively. **For the 2019 plan year, forfeited non-vested**

**accounts totaling $3,720,905 were utilized to offset Company profit sharing contributions to eligible participants**." (emphasis added).

49.     This language, consistent with the applicable Plan language, makes clear that the Plan Committee did not prioritize paying reasonable Plan administrative expenses and that the Plan Committee used its discretion to favor WWG by offsetting profit sharing contributions. The Plan Committee in 2019 did not use any money to pay Plan administrative expenses, which would have benefitted participants rather than WWG.

50.     In  2020, the Financial Statement Notes attached to the 2020 Form 5500 (page 32 of 44) states: "The **forfeiture account amounts are utilized to pay reasonable administrative expenses** of the Plan, and to restore accounts for a plan year or to offset Company profit sharing contributions. Unallocated forfeiture balances as of December 31, 2020 and 2019, were $4,980,670 and $3,720,905, respectively. For the 2020 plan year, **forfeited non-vested accounts totaling $7,230,893 were utilized to offset Company profit sharing contributions to eligible participants**." (emphasis added).

51.     This language, consistent with the applicable Plan language, makes clear that the Plan Committee did not prioritize paying reasonable Plan administrative expenses and that the Plan Committee used its discretion to favor WWG by offsetting profit sharing contributions. The Plan Committee in 2020 did not use any money to pay Plan administrative expenses, which would have benefitted participants rather than WWG.

52.     In  2021, the Financial Statement Notes attached to the 2021 Form 5500 (page 34 of 46) states: "The **forfeiture account amounts are utilized to pay reasonable administrative expenses** of the Plan, to restore eligible accounts, and to offset Company contributions. Unallocated forfeiture balances as of December 31, 2021 and 2020, were $1,089,698 and $4,980,670, respectively. For the 2021 plan year, **forfeited non-vested accounts totaling $4,610,417 were utilized to offset Company contributions to eligible participants**." (emphasis added).

53.     This language, consistent with the applicable Plan language, makes clear that the Plan Committee did not prioritize paying reasonable Plan administrative expenses and that the Plan Committee used its discretion to favor WWG by offsetting company contributions. The Plan Committee in 2021 did not use any money to pay Plan administrative expenses, which would have benefitted participants rather than WWG.

54.     In  2022, the Financial Statement Notes attached to the 2022 Form 5500 (page 35 of 48) states: "The **forfeiture account amounts are utilized to pay reasonable administrative expenses of the Plan**, to restore eligible accounts, and to offset Company contributions. Unallocated forfeiture balances as of December 31, 2022 and 2021, were $1,976,137 and $1,089,698, respectively. For the 2022 plan year, **forfeited non-vested accounts totaling $2,977,558 were utilized to offset Company contributions to eligible participants**." (emphasis added).

55.     This language, consistent with the applicable Plan language, makes clear that the Plan Committee did not prioritize paying reasonable Plan administrative expenses and that the Plan Committee used its discretion to favor WWG by offsetting company contributions. The Plan Committee in 2022 did not use any money to pay Plan administrative expenses, which would have benefitted participants rather than WWG.

56.     In  2023, the Financial Statement Notes attached to the 2023 Form 5500 (page 36 of 51) states: "The **forfeiture account amounts are utilized to pay reasonable administrative expenses of the Plan**, to restore eligible accounts, and to offset Company contributions. Unallocated forfeiture balances as of December 31, 2023 and 2022, were $72,668 and $1,976,137, respectively. For the 2023 plan year, **forfeited non-vested accounts totaling $4,000,000 were utilized to offset Company contributions to eligible participants**." (emphasis added).

57.     This language, consistent with the applicable Plan language, makes clear that the Plan Committee did not prioritize paying reasonable Plan administrative expenses and that the Plan Committee used its discretion to favor WWG by offsetting company contributions. The Plan

Committee in 2023 did not use any money to pay Plan administrative expenses, which would have benefitted participants rather than WWG.

      **B.**    **Defendants Breach Their Fiduciary Duties and Engaged in Prohibited Transaction By Exclusively Using Plan Forfeitures to Reduce Their Plan Contributions.**

    58.    The following table illustrates the amount the Plan and its participants (including Plaintiffs) lost in potential Plan expenses being paid through forfeitures as a result of Defendants' using Plan forfeitures *exclusively* for their own benefit from 2019 through 2023 (compounded through 2024), rather than paying all Plan expenses as should have been prioritized as required by the Plan document:

### Forfeitures Used for Employer's Benefit *(Per Se)*

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| **Forfeitures Used to Reduce Employer Contributions** | $3,720,905 | $7,230,893 | $4,610,417 | $2,977,558 | $4,000,000 | |
| *Compounding Percentage (Plan Return)* | | 13.04% | 12.72% | -14.99% | 17.47% | 18.77% |
| **Potential Cumulative Compounded Losses** | **$3,720,905** | **$11,437,026** | **$17,501,954** | **$17,856,778** | **$24,976,745** | **$29,664,891** |
| Sources: | 2019 Form 5500, Page 31 of 44 | 2020 Form 5500, Page 32 of 44 | 2021 Form 5500, Page 34 of 46 | 2022 Form 5500, Page 35 of 48 | 2023 Form 5500, Page 36 of 51 | |

    59.    Even if the Plan Committee had discretion to allocate Plan forfeitures, the following table illustrates the amount the Plan and its participants (including Plaintiffs) lost in potential Plan expenses being paid through forfeitures as a result of Defendants' using Plan forfeitures *exclusively* for their own benefit from 2019 through 2023 (compounded through 2024), rather than using it to pay Plan expenses as discretionally permitted by the Plan document:

### Forfeitures Not Used to Pay Plan Expenses *(Disloyal Discretion)*

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| **Minimum Forfeitures Available to offset Plan Expenses** | $3,720,905 | $7,230,893 | $4,610,417 | $2,977,558 | $4,000,000 | $0 |
| **Total Direct Compensation** | $1,395,998 | $1,739,271 | $1,108,311 | $1,290,766 | $1,390,596 | $0 |
| **Forfeitures used to pay Plan Expenses** | $0 | $0 | $0 | $0 | $0 | |
| **Potential Losses** | $1,395,998 | $1,739,271 | $1,108,311 | $1,290,766 | $1,390,596 | $0 |
| *Compounding Percentage (Plan Return)* | | 13.04% | 12.72% | -14.99% | 17.47% | 18.77% |
| **Potential Cumulative Compounded Losses** | **$1,395,998** | **$3,317,315** | **$4,847,508** | **$5,411,857** | **$7,748,022** | **$9,202,329** |

60.     ERISA explicitly requires Plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

61.     Moreover, because ERISA provides that "a fiduciary shall discharge his duties "(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]," ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), the Plan Committee also violated its fiduciary duties by failing to prioritizing paying Plan expenses first before using Plan forfeitures to reduce their own company as the Plan document requires.

62.     Additionally, in deciding to use Plan forfeiture to benefit itself as far as reducing future company contributions through use of Plan assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing violates both the ERISA party-in-interest and fiduciary prohibited transaction rules under 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b).

63.     Plan assets in trust should have been used for the exclusive purpose for which they were contributed in the first place: for the benefit of Plan participants through the reduction of their Plan administrative expenses.

64.     Defendants should have allocated this forfeiture money to pay Plan expenses, as required and permitted by the Plan, and then Plan participants would have been better off.

65.     On the other hand, using the forfeitures to offset and reduce future employer profit sharing and other contributions is always in the best interest of WWG because that option decreases WWG's own contribution costs.

66.     Although it is possible that reducing employer contributions may be in the best interests of participants where there is a risk that WWG may be financially unable to satisfy its matching contribution obligations, there is no evidence that WWG had such financial inability.

67. Absent a risk that WWG would be unable to satisfy its contribution obligations under the Plan, however, using forfeitures to "pay plan administrative expenses" would always be in the participants' best interest because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such expenses.

68. In deciding between using the forfeiture to benefit WWG or using the forfeitures to benefit the participants, Defendants are presented with a conflict of interest in administering the Plan and managing and disposing of its assets.

69. While Defendants' decisions to use the Plan's forfeitures to offset or reduce its profit-sharing and other contributions benefitted the WWG by lowering its costs, it harmed the Plan, along with its participants and beneficiaries, by reducing the amount of assets the Plan otherwise would have received and by causing deductions from participants' accounts to cover expenses that otherwise would have been covered in whole or in part by Plan forfeitures.

70. The deduction of Plan expenses from the participants' accounts reduces the funds available to participants for distribution and/or investing and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

71. In so doing, Defendants breached their fiduciary duties of loyalty and failing to follow Plan language, and cost the Plaintiffs and class members tens of millions of dollars of lost retirement income.

72. The forfeiture money should not have been used to benefit WWG through reduced Plan profit-sharing and employer contributions and instead, should have been allocated to Plan participant accounts to pay Plan administrative expenses as both required and permitted by the Plan document.

73. Furthermore, ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man

acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

74.    Despite the conflict of interest presented by the decision to use Plan forfeitures for WWG's own benefit, Defendants failed to undertake any prudent investigation into which option was the most prudent action to take.

75.    Defendants did not, for example, investigate whether there was a risk that WWG would default on its Plan profit sharing or other contributions if forfeitures were used to pay Plan expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plan administrative expenses charged to participants and still offset a portion of WWG's own contribution obligations, as a prudent person would have done.

76.    Defendants also failed to consult with independent non-conflicted decisionmakers to advise them in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done.

77.    Instead, Defendants have consistently and reflexively chosen to use the forfeitures for their own interest, to the detriment of the Plan and its participants, by allocating all forfeitures toward offsetting and reducing WWG's profit-sharing and other contributions owing to the Plan.

78.    For each year between 2019 and 2024, WWG was under no risk of defaulting on its contribution obligations to the Plan. Nevertheless, throughout that period, Defendants consistently based the decision of how to allocate forfeitures solely on their own self-interest and failed to consider the interests of the Plan and its participants.

79.    These breaches of the duty of loyalty, prudence, and failure to follow the Plan, as well as fiduciary and party-in-interest prohibited transactions, cost the Plaintiffs and class members tens of millions of dollars in lost Plan assets that should have been used to pay off Plan administrative expenses as required and permitted by the Plan.

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(1), or, in the alternative, 23(b)(2), of the Federal Rules of Civil Procedure on behalf of the following class of similarly situated persons:

> All participants in and beneficiaries of the W.W. Grainger, Inc. Retirement Savings Plan at any time from the earlier of (i) six years before the filing of this action, or (ii), in the event the Court determines that Defendants have concealed the facts and circumstances that would have apprised Plaintiffs and the Class of the existence of Defendants' breaches, through the date of judgment.

81.     The members of the class are so numerous that joinder of all members is impracticable. At all relevant times, the number of class members is over thrity thousand (30,000).

82.      Common questions of law and fact exist as to all members of the class. Among such questions are:

i.      Whether Defendants failed in their fiduciary duties of loyalty, prudence, and by failing to follow the Plan document, with respect to the administration, management and supervision of Plan services providers in allocating Plan forfeitures;

ii.     Whether Defendants engaged in party-in-interest or fiduciary prohibited transactions with Plan assets, by using Plan forfeitures to offset and reduce WWG's Plan profit-sharing and other contributions rather than using those plan assets to pay Plan administrative expenses; and,

iii.    Whether Defendants' breaches of fiduciary duties and prohibited transactions caused losses to the Plan and its participants, and if so, in what amounts.

83.     Plaintiffs' claims are typical of the claims of the  class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct for the class.

84.     Plaintiffs will adequately represent the class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plan during the class period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

85.     Class certification of Plaintiffs' claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual class members would as a practical matter be dispositive of the interests of non-party class members.

86.     In the alternative, certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

87.     Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the class.

88.     The claims brought by the Plaintiffs arise from fiduciary breaches and prohibited transactions as to the Plan in its entirety and does not involve mismanagement of individual accounts.

89.     The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

90.     Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

91.     Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

92.     Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan

administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

**FIRST CLAIM FOR RELIEF**
**Failure to Follow Plan Documents**
**(Plaintiffs, On Behalf Of Themselves and Class, Against Plan**
**Committee – Misallocation Of Forfeitures)**

93.     Plaintiffs restate the above allegations as if fully set forth herein.

94.     Fiduciary provisions under ERISA require "a fiduciary [to] discharge his duties with respect to a plan solely in the interest of participants and beneficiaries and—. . . (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D).

95.     The Plan Committee violated its fiduciary duties during the class period, by failing to prioritize paying Plan administrative expenses before using Plan forfeitures to offset or reduce their own company profit-sharing or other employer contributions as required by the Plan in Section 8.4 of the Plan document:

> **8.4.     Forfeitures**. Forfeiture Account amounts shall be utilized to pay reasonable administrative expenses of the Plan, . . . **and then** . . . beginning with the 2016 Plan Year, to offset Company Profit Sharing Contributions, and . . . beginning with the 2021 Plan Year, to offset Company Contributions (aka Safe Harbor Company Contributions). (emphasis added).

96.      Section 8.4 specifically requires that the Plan forfeiture Account amounts be utilized first to pay "reasonable administrative expenses of the Plan," before offsetting any company contributions to the Plan.

97.     There is no valid reason that the forfeited amounts could not have been used to pay Plan recordkeeping and administrative expenses, as Plaintiffs and other class members where charged on a quarterly basis for Plan administrative and recordkeeping fees, as well as various other Plan fees, during the Class Period.

98.     Defendants use of Plan forfeitures was inconsistent with the Plan document and, therefore, amounted to a fiduciary breach pursuant to 29 U.S.C. § 1104(a)(1)(D).

99.     As a direct and proximate result of Defendants Plan Committee's fiduciary breaches, the Plan suffered injury and loss for which Defendant Plan Committee is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

100.    The Plan Committee knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a)

**SECOND CLAIM FOR RELIEF**
**Breach of Duty of Loyalty**
**(Plaintiffs, On Behalf Of Themselves And Class,**
**Against Plan Committee – Misallocation Of Forfeitures)**

101.    Plaintiffs restate the above allegations as if fully set forth herein.

102.    Defendant Plan Committee is a fiduciary of the WWG Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

103.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendant Plan Committee was required to discharge their duties to the WWG Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

104.    Defendant Plan Committee have continually breached this duty of loyalty with respect to their control and management of the Plan's assets throughout the Class Period by discretionarily choosing to utilize forfeited funds in the Plan for the sole benefit of WWG rather than exclusively in the interest of the Plan participants and beneficiaries.

105.     Instead of acting solely in the interest of Plan participants by utilizing forfeited funds in the Plan to reduce and eliminate the recordkeeping and administrative expenses charged to their individual accounts, Defendant Plan Committee discretionarily chose, as fiduciaries, to use Plan assets for the exclusive purpose of offsetting and reducing WWG's profit-sharing and other contributions to the Plan, thereby saving WWG tens of millions of dollars at the expense of the Plan and its participants.

106.     In making this decision, Defendant Plan Committee was motivated primarily or exclusively by their own self-interest rather than the interests of the Plan's participants and beneficiaries.

107.     As a direct and proximate result of Defendant Plan Committee's fiduciary breaches described herein, the Plan suffered injury and loss for which it is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

108.     Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**THIRD CLAIM FOR RELIEF**
**Breach of Duty of Prudence**
**(Plaintiffs, On Behalf Of Themselves and Class, Against**
**Plan Committee – Misallocation Of Forfeitures)**

109.     Plaintiffs restate the above allegations as if fully set forth herein.

110.     Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendant Plan Committee was required to discharge its duties with respect to the WWG Plan "with the care, skill, prudence, and diligence

under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

111.    Defendant Plan Committee has continuously breached its duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the class period by declining to use the forfeited funds in the Plan to eliminate Plan recordkeeping and administrative expenses charged to participant accounts, and instead using such Plan assets to reduce WWG's own profit-sharing and other contributions to the Plan.

112.    In deciding how to allocate forfeitures, Defendant Plan Committee utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendant Plan Committee failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited funds in the Plan to reduce the Company's own profit-sharing and other contributions to the Plan, as opposed to pay the recordkeeping and administrative expenses charged to participant accounts, was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.

113.    By refusing to use forfeited funds in the Plan to reduce or eliminate the Plan recordkeeping and administrative expenses charged to participant accounts, and instead deciding to use these Plan assets to reduce WWG's own profit-sharing and other contributions to the Plan, Defendant Plan Committee caused the Plan to receive fewer contributions that would otherwise have increased Plan assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plan expenses.

114.    As a direct and proximate result of Defendant Plan Committee's fiduciary breaches described herein, the Plan suffered injury and loss for which Defendant Plan Committee is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109,

including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

115.     Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach.   Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**FOURTH CLAIM FOR RELIEF**
**Fiduciary Prohibited Transactions**
**(Plaintiffs, On Behalf Of Themselves and Class,**
**Against Plan Committee – Self-Dealing With Forfeitures)**

116.     Plaintiffs restate the above allegations as if fully set forth herein.

117.     29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

118.     Defendant Plan Committee violated this prohibition in its management and control of forfeiture funds in the Plan. By allocating these Plan assets toward offsetting WWG's profit-sharing and other contributions to the Plan, thereby saving WWG tens of millions of dollars in contribution expenses, Defendant Plan Committee dealt with the assets of the Plan in their own interest and for their own account.

119.     As a result of this prohibited conduct, Defendant Plan Committee caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer future contributions and the lost investment returns on those assets.

120.     Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## FIFTH CLAIM FOR RELIEF
### Party-In-Interest Prohibited Transactions
### (Plaintiffs, On Behalf Of Themselves and Class,
### Against Plan Committee – Benefitting Employer)

121.    Plaintiffs restate the above allegations as if fully set forth herein.

122.    29 U.S.C. § 1106(a)(1)(D) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect - transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

123.    Defendant Plan Committee, as fiduciaries of the WWG Plan, caused the Plan to engage in a transaction that used the assets of Plan for the benefit of a party in interest, WWG, by using Plan forfeitures to reduce the profit-sharing and other contributions of WWG.

124.    By allocating Plan forfeitures to be used for the benefit of reducing profit-sharing and other contributions to the Plan, the Plan Committee misused tens of millions of dollars of Plan forfeitures which could have been used to pay recordkeeping and administrative expenses for Plan participants.

125.    Defendant Plan Committee and its members are personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the improper use of Plan assets, and is subject to other equitable or remedial relief as appropriate.

126.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## SIXTH CLAIM FOR RELIEF
### Failure to Adequately Monitor Other Fiduciaries
### (Plaintiffs, on behalf of Themselves and Class,
### Against Defendant WWG and Board – Misallocation of Forfeitures)

127.    Plaintiffs restate the above allegations as if fully set forth herein.

128.   Under Section 14.4 of the Plan document, Defendant WWG, through its Board of Directors, has the authority to determine the number of members on Plan Committee, and to appoint and remove those Committee members. Defendant WWG knew or should have known that these fiduciaries had critical responsibilities for the Plan.

129.   In light of this authority, Defendant WWG and its Board had a fiduciary duty to monitor those individuals responsible for the allocation of Plan forfeitures on the Plan Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the WWG Plan in the event that these individuals were not fulfilling those duties.

130.   Defendant WWG had a duty to ensure that the individuals responsible for allocating Plan forfeitures possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the allocation of WWG Plan's forfeitures; and reported regularly to Defendant WWG and its Board.

131.   The objectively disloyal, imprudent, and conflicted manner in which Defendant Plan Committee allocated Plan forfeitures inferentially establish that Defendant WWG and its Board breached their duty to monitor by, among other things:

(a)   Failing to monitor and evaluate the performance of individuals responsible for allocation of Plan forfeitures on the Plan Committee or have a system in place for doing so, standing idly by as the WWG Plan misallocated Plan forfeiture for WWG's own benefit;

(b)   Failing to monitor the process by which the Plan Committee was evaluated and failing to investigate the proper use of Plan forfeitures; and

(c)   Failing to remove individuals responsible for Plan forfeitures on the Plan Committee whose performance was inadequate in that these individuals continued to misallocate Plan forfeitures for the benefit of WWG.

132. As the consequences of the breaches of the duty to monitor allocation of Plan forfeitures, the Plaintiffs and Plan participants suffered tens of millions of dollars of objectively unreasonable and unnecessary monetary losses.

133. Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendant WWG and its Board are liable to restore to the WWG Plan all losses caused by their failure to adequately monitor individuals responsible for allocation of Plan forfeitures on the Plan Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

WHEREFORE, Plaintiffs pray that judgment be entered and requests the following relief:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A Declaration the Defendants are fiduciaries, have breached their fiduciary duties of loyalty, prudence, and failure to follow Plan documents under ERISA, and engaged in fiduciary and party-in-interest prohibited transactions, causing harm to Plan participants and beneficiaries;

D.    An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' fiduciary breaches and prohibited transactions, including restoring to the Plan all losses resulting from using Plan forfeitures to inappropriately benefit WWG by offsetting reducing their profit-sharing and other contributions to the Plan, all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the Participants would have made if the Defendants had not engaged in fiduciary breaches or prohibited transactions;

E.    An Order requiring WWG to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against WWG as necessary to effectuate relief, and to prevent WWG's unjust enrichment;

F.    An Order enjoining Defendants from any further prohibited transactions or violations of their ERISA fiduciary responsibilities, obligations, and duties, with regard to the allocation of Plan forfeitures.

G.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties with regard to Plan forfeitures;

H.      An award of pre-judgment interest;

I.      An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.      Such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Date: May 12, 2025                **WALCHESKE & LUZI, LLC**

*/s/ Paul M. Secunda*
Paul M. Secunda
125 S. Wacker Dr., Suite 300
Chicago, Illinois 60606
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

*Attorneys for Plaintiffs and Proposed Class*