**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GARDNER-KEEGAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>W.W. GRAINGER, INC., et al.,<br><br>Defendants. | Case No. 1:25-cv-5233<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Adrianne Gardner-Keegan, Scott A. Norman, and Alison Dela Riva ("Plaintiffs"), individually and as representatives of a class of participants and beneficiaries of the W.W. Grainger, Inc. Retirement Savings Plan (the "Plan"), bring this six-count action against W.W. Grainger, Inc. ("Grainger") and the W.W. Grainger Inc. Profit Sharing Investment Committee (the "Plan Committee") (collectively, "Defendants") alleging various violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendants have moved to dismiss all of Plaintiffs' claims. [11].

For the reasons stated herein, Defendants' Motion to Dismiss [11] is granted in part.

## I.    Background

The following factual allegations taken from the operative complaint [1] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

1

Grainger is an industrial supply company that serves more than 4.5 million customers worldwide with products such as motors, lighting, material handling, fasteners, plumbing, tools, and safety supplies, along with inventory management services and technical support. [1] ¶ 10. Grainger sponsors the Plan, which is an individual account, defined-contribution retirement benefit plan. *Id.* ¶ 41. The Plan Committee administers the Plan and is a fiduciary for the Plan. *Id.* ¶ 15. Grainger has authority to determine the number of members on the Plan Committee as well as appoint and remove Plan Committee members. *Id.* ¶ 14. Plaintiffs are current and former participants of the Plan. *Id.* ¶¶ 17–19, 40.

The Plan is funded through a combination of wage withholding contributions from Plan participants and employer profit-sharing contributions from Grainger. *Id.* ¶ 37. Grainger's contributions to the Plan vest over time. *Id.* ¶ 42. As a result, if a Plan participant's employment ends before their vesting date, they forfeit Grainger's employer contributions. *Id.* ¶ 43.

Section 8.4 (titled "Forfeitures") of the governing Plan document ("Plan Document")[1] sets forth how forfeited employer contributions (also referred to as "forfeitures") are to be used. *Id.* ¶ 45. Section 8.4 contains the following provision:

---

[1]As explained by Defendants, there are two versions of the Plan Document: the "W.W. Grainger, Inc. Employees Profit Sharing Plan" effective January 1, 2016 [13-1], and the "W.W. Grainger, Inc. Retirement Savings Plan," effective January 1, 2021 [13-2]. [12] at n.2. Neither of these documents were provided as part of the Complaint, but the Court can nevertheless consider them. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("It is also well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.")(cleaned up). Defendants contend the 2016 and 2021 versions contain the same forfeiture and plan expense

> Forfeiture Account amounts shall be utilized to pay reasonable administrative expenses of the Plan and to restore Accounts for a Plan Year, as directed by the Committee, and then (i) for Plan Years prior to the 2016 Plan Year, to increase the amount allocated as Company Profit Sharing Contributions for that Plan Year, (ii) beginning with the 2016 Plan Year, to offset Company Profit Sharing Contributions, and (iii) beginning with the 2021 Plan Year, to offset Company Contributions (aka Safe Harbor Company Contributions).

*Id.* ¶ 45.

Plaintiffs contend that the language of this provision obligated the Plan Committee to utilize forfeitures to pay reasonable administrative expenses (Step 1) before offsetting Grainger's contributions to the Plan (Step 2). *Id.* ¶¶ 46, 96. Defendants disagree with this interpretation. [12] at 4–13.

From 2019 to 2023, the Plan Committee did not utilize forfeitures to pay reasonable administrative expenses for the Plan but instead utilized forfeitures to offset Grainger's profit-sharing contributions to the Plan. [1] ¶¶ 48–57. In other words, the Plan Committee skipped Step 1. *Id.* ¶ 46. Plaintiffs allege that such actions violated ERISA. *Id.* ¶¶ 93–133.

On May 12, 2025, Plaintiffs filed this instant action against Defendants as well as the Board of Directors of W.W. Grainger, Inc. (the "Board"). [1]. Plaintiffs' Complaint alleges that the Plan Committee (1) failed to follow the Plan Document's requirement to prioritize paying reasonable administrative expenses before offsetting employer contributions (Count I); (2) improperly utilized forfeitures to disloyally reduce future

---

provisions. [12] at n.2. Plaintiffs do not disagree. For the sake of simplicity and because Complaint appears to rely on the 2021 version, the Court will cite to the 2021 version when making references to the Plan Document herein.

employer contributions by Grainger (Count II); (3) did not engage in a prudent process when deciding to use forfeitures for Grainger's benefit rather than to reduce Plan expenses (Count III); (4) engaged in fiduciary prohibited transactions by favoring their own accounts with forfeitures (Count IV); and (5) engaged in prohibited party-in-interest fiduciary transactions by enriching themselves through forfeitures (Count V). *Id.* ¶¶ 6, 93–126. The Complaint further alleges that Grainger and the Board failed to monitor those responsible on the Plan Committee for allocation of forfeitures (Count VI). *Id.* ¶¶ 6, 127–131.

On June 26, 2025, the parties filed a stipulation of dismissal as to the Board only. [6]. The Court dismissed the Board without prejudice on June 30, 2025. [8].

On July 18, 2025, Defendants moved to dismiss Plaintiffs' Complaint. [11].

## II.    Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements

of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Additionally, where a defendant asserts a facial challenge to subject matter jurisdiction and moves to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court applies *Twombly-Iqbal's* "'plausibility' requirement." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). In assessing whether a plaintiff has established standing, the Court accepts as true "all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 381–82 (7th Cir. 2020).

## III. Analysis

Defendants bring a facial standing challenge under Rule 12(b)(1) and a failure to state a claim challenge under Rule 12(b)(6). The Court addresses each in turn.

## A. Standing

Defendants argue that Plaintiffs lack Article III standing to assert their claims. [12] at 4–7; [19] at 2–4. To satisfy Article III standing requirements, a plaintiff must show that (1) he suffered an injury in fact, (2) the injury was likely caused by the defendant, and (3) the injury would likely be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). At the pleading stage, the plaintiff bears the burden of establishing these elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

As noted, Plaintiffs contend that under Section 8.4 of the Plan Document, the Plan Committee was obligated to utilize forfeitures to pay reasonable administrative expenses (Step 1) before offsetting Grainger's contributions to the Plan (Step 2). [1] ¶ 96. Plaintiffs maintain they were injured when the Plan Committee disregarded this language and instead used forfeitures to reduce Grainger's contributions (Step 2) without first paying reasonable administrative expenses (Step 1). *Id.* ¶¶ 20, 47, 69–72.

Defendants offer a competing view, urging that where an ERISA plan, like the one here, requires plan participants to bear the costs of administrative expenses, the participants lack Article III standing to assert a forfeiture claim based on the non-allocation of forfeitures to those expenses. [12] at 7. They point to Section 6.4 and Appendix B of the Plan Document in support of this position. The relevant portions of Section 6.4 and Appendix B read as follows:

> Account Maintenance: Account maintenance fees and expenses, may include, but are not limited to, administrative, Trustee, government

6

annual report preparation, audit, legal, nondiscrimination testing and fees for any other special services. Account maintenance fees shall be charged to Participants on a per Participant basis provided that no fee shall reduce a Participant's Account balance below zero.

… As of the Effective Date, a breakdown of which Plan fees and expenses shall generally be borne by the Trust (and charged to individual Participants' Accounts or charged at the Investment Fund level and reflected in the net gain or loss of each Investment Fund) and those that shall be paid by the Employer, directly or indirectly, shall be set forth in Appendix B, which may be changed from time to time by the Committee without the necessity of formally amending the Plan.

[13-2] § 6.4.

As of the Effective Date, payment of Plan fees and expenses shall be as follows

… 2) Record-keeping Fees: These are paid by Participants and are assessed monthly and billed/collected from Accounts quarterly.

…

4) Additional Fees Paid by Participants: Fees for audit expenses, determination letter requests, postage, production costs for routine communications and certain third-party legal fees shall be added to the recordkeeping fees and assessed against Participants' Accounts, per 2) above. Estimates of the fees shall be determined and reconciled, at least annually.

*Id.* at Appendix B.

In view of this language, Defendants argue that Plaintiffs did not suffer an Article III injury when the Plan Committee did not use forfeitures to pay reasonable administrative expenses because Section 6.4 and Appendix B hold Plan participants (like Plaintiffs) exclusively responsible for those expenses. [12] at 6–7. Plaintiffs oppose this view, asserting that Defendants' reading of Section 6.4 and Appendix B "override[s]" Section 8.4. [17] at 7. Defendants, on the other hand, contend that

"Section 8.4 does not override the language of Section 6.4 (and Appendix B)." [12] at 6.

Given the nature of Defendants' position, whether Plaintiffs have Article III standing requires the Court to interpret the Plan Document. Because the Plan is an ERISA-governed plan, the Court applies federal common law rules of contract interpretation. *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012). Under these rules, the language of an ERISA plan must be "given its plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement." *Id*. In interpreting an ERISA plan, the first task for the Court is to determine whether the plan language at issue "is ambiguous or unambiguous." *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2001). "Contract language is ambiguous if it is susceptible to more than one reasonable interpretation." *Id*. Where the terms of an ERISA plan document are unambiguous, a court "need not consider extrinsic evidence and should proceed to declare the meaning of the provision." *Id*. (internal quotations omitted).

The Court finds the Plan Document unambiguous as to this issue. Section 8.4 plainly states that "Forfeiture Account amounts shall be utilized to pay reasonable administrative expenses of the Plan and to restore Accounts for a Plan Year, as directed by the Committee." [13-2] § 8.4. Regardless of whether the Plan Committee was obligated by this language to pay reasonable administrative expenses or was given discretion to do so (more on this later), Section 8.4 grants, at a minimum, a contractual ability to allocate forfeitures to offset reasonable administrative

expenses. By alleging that the Plan Committee disregarded this language—resulting in the Plan and its participants being stuck with the bill—Plaintiffs have sufficiently alleged an Article III injury.

Section 6.4 and Appendix B do not change this conclusion. While Section 6.4 commands that "[a]ccount maintenance fees shall be charged to Participants on a per Participant basis," the definition of "Accounts maintenance fees" does not by default encompass *all* administrative expenses, as Defendants contend. Rather, Section 6.4 makes clear that "Account maintenance fees and expenses *may include*, but are not limited to, administrative, Trustee, government annual report preparation, [and] audit" fees, among other possibilities. [13-2] § 6.4. (emphasis added). Similarly, the Plan Document explicitly qualifies Appendix B by stating that "a breakdown of which Plan fees and expenses shall *generally* be borne by the Trust [and] charged to individual Participants' Accounts … shall be set forth in Appendix B." *Id*. (emphasis added). So, while Section 6.4 charges Plan participants with "[a]ccount maintenance fees," such fees, by definition, do not automatically mean all administrative expenses. As a result, Section 6.4 does not "override" Section 8.4's contractual ability to assign "reasonable administrative expenses" to be paid for by forfeitures.

Nor does Section 8.4 "override" Section 6.4 and Appendix B. The provisions, rather, act in tandem. Forfeitures "shall be utilized" to pay "reasonable administrative expenses" per Section 8.4's instruction. *Id*. § 8.4. At the same time, Plan participants "shall be charged" with "[a]ccount maintenance fees," which "may include" (or "generally" include) administrative expenses not offset by forfeitures

9

(*e.g.*, if no forfeitures are present) or "may include" administrative expenses offset by forfeitures pursuant to Section 8.4. *Id.* § 6.4. In other words, Section 8.4 operates first in the payment waterfall, covering "reasonable administrative expenses," while Section 6.4 operates afterward, covering the remainder. By contrast, a reading that Section 6.4 holds Plan participants exclusively responsible for administrative expenses leads to an unreasonable result. Specifically, if Section 6.4's directive that administrative expenses "shall be charged to Participants" was interpreted to mean Plan participants must bear 100% of administrative expenses without application of forfeitures, Section 8.4's mandate that forfeitures "shall be utilized to pay reasonable administrative expenses" would be effectively nullified. *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 462 (7th Cir.2001) (declining to interpret an ERISA plan to render a word superfluous).

In sum, the only reasonable interpretation that honors the plain language and structure of the Plan Document is one where Section 6.4 does not cause Plan participants to automatically bear 100% of administrative expenses but instead that administrative expenses charged to Plan participants under Section 6.4 can first be subject to forfeiture offsets from Section 8.4. And because Plaintiffs allege that offsets from Section 8.4 were never applied by the Plan Committee, they allege an Article III injury.

For these reasons, Defendants' Rule 12(b)(1) challenge is denied.

### B. Failure to State a Claim

#### i. Counts I-III (Breach of Fiduciary Duty)

To state a breach of fiduciary duty claim against the Plan Committee, Plaintiffs must plead facts plausibly alleging that (i) the Plan Committee was acting in a fiduciary capacity, (ii) it breached a fiduciary duty, and (iii) the breach harmed the Plan. *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928, 942–943 (7th Cir. 2024). Defendants argue that the Complaint fails to meet any of these elements. The Court disagrees.

### 1. The Plan Committee Was Acting in a Fiduciary Capacity

Defendants first argue that Counts I-III do not implicate fiduciary functions. [12] at 11–12. According to Defendants, Counts I-III are best characterized as challenges to the Plan Document's terms requiring participants to pay for the Plan's administrative expenses—not challenges the Plan Committee's allocation of forfeitures—and consequently implicate settlor functions. *Id*.

Fiduciary duties "consist of such actions as the administration of the plan's assets." *Hutchins v. HP, Inc.,* ("*Hutchins I*") 737 F. Supp. 3d 851, 860 (N.D. Cal. 2024) (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999)). By contrast, settlor duties include decisions "regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." *Id*. (quoting *Hughes Aircraft*, 525 U.S. at 444).

The Court disagrees with Defendants' characterization of Counts I-III. Plaintiffs are not challenging decisions regarding the design of the Plan. Rather, they are attacking the Plan Committee's decision on how to apply forfeited Plan assets. [1] ¶ 95 ("The Plan Committee violated its fiduciary duties … by failing to prioritize paying

Plan administrative expenses before using Plan forfeitures to offset or reduce their own company profit-sharing or other employer contributions as required by the Plan in Section 8.4 of the Plan document."); *see also id.* ¶¶ 104, 111, 112. Put differently, Plaintiffs challenge not the decision to include the language of Section 8.4 in the Plan Document, but the Plan Committee's implementation of that language. Attacks on the implementation of an ERISA plan's written provisions implicate fiduciary, not settlor, functions. *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 695 (7th Cir. 2005) ("The fiduciary duty of a plan administrator is to implement faithfully the provisions of the plan as written.") (internal quotations and citation omitted); *Dimou v. Thermo Fisher Scientific Inc. ("Dimou I"), No.* 23-CV-1732, 2024 WL 4508450, at *8 (S.D. Cal. Sept. 19, 2024) ("[A]lthough the decision to include a plan term setting forth various permissible uses for forfeitures is a settlor function, implementing that decision is a fiduciary function.") (citing *Hutchins I*, 737 F.Supp. at 861).

Because Plaintiffs have plausibly pled that the Plan Committee's actions implicated fiduciary functions, the Court declines to dismiss Counts I-III on this basis.

### 2. The Plan Committee Breached Its Fiduciary Duties

Defendants next contend that Plaintiffs have failed to allege any breach of fiduciary duty by the Plan Committee. [12] at 8–13; [19] at 5–10. As Defendants' arguments differ slightly for each of Counts I, II, and III, the Court addresses each in turn.

a. Count I (Failure to Follow the Plan)

ERISA requires fiduciaries to "discharge their duties ... in accordance with the documents and instruments governing the plan." *Su v. Johnson*, 68 F.4th 345, 352 (7th Cir. 2023) (citing 29 U.S.C. § 1104(a)(1)(D)). The rule aims to ensure that "every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." *Young v. Verizon's Bell Atl. Cash Balance Plan*, 667 F. Supp. 2d 850, 894 (N.D. Ill. 2009) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995))

Defendants contend that Plaintiffs do not plausibly allege that the Plan Committee failed to comply with the terms of the Plan Document. [12] at 12–13; [19] at 5–6. In support, Defendants again rely on Section 6.4 and Appendix B to assert that Plan participants are exclusively responsible for administrative expenses. *Id*. For the reasons explained, the Court finds this position unpersuasive. *Supra* § III.A.

As an alternative, Defendants contend that the phrase "as directed by the Committee" in Section 8.4 gives discretion to the Plan Committee to determine whether to allocate forfeitures to pay reasonable administrative expenses. [19] at 6. The Plan Committee, therefore, did not violate the language of the Plan Document when it decided not to do so. *Id*. Plaintiffs disagree with Defendants' interpretation. [17] at 6, 9.

Defendants' argument again requires the Court to interpret the Plan Document's terms. Like before, the Court applies federal common law rules of contract interpretation. *Schultz*, 670 F.3d at 838. In doing so, the Court must read the Plan

Document as a whole, "considering separate provisions in light of one another and in the context of the entire agreement." *Id.* "If the plan document is unambiguous, it can be construed as a matter of law." *Michael v. First Com. Bank*, 69 F. App'x 801, 805 (7th Cir. 2003) (citation omitted).

The Court begins its interpretive task by discussing an entity that has not yet been mentioned: the Trustee. The Trustee is the trustee of the trust established in connection with the Plan. [13-2] § 1.56; 1.57. "All Plan assets" are "held by the Trustee in trust for use in providing Plan benefits and paying Plan fees and expenses not paid directly by the Employer." *Id.* § 15.1. While the Trustee can sometimes act on its own with respect to such assets, *see e.g.*, *id.* § 15.2 ("The Trustee may establish reasonable limits on the number of Investment Funds…"), the Plan Document regularly requires the Plan Committee to direct[2] the Trustee regarding the administration of assets. *Id.* § 3.4(c)(iv)("the Committee shall direct the Trustee to distribute…"); *id.* § 4.2 ("The Committee may instruct the Trustee to receive…"); *id.* § 14.8(c) ("[Committee members may] give written direction to the Trustee in the performance of its duties."); *id.* § 15.5 ("The Committee may direct the Trustee to split an Investment Fund …"); *id.* § 15.7 ("The Committee shall instruct the Trustee…"). This includes directions for the Trustee to distribute amounts from Forfeiture Accounts held by the Trustee. *Id.* § 6.6 ("the Committee may direct the Trustee to use amounts from the Forfeiture

---

[2]Directions from a fiduciary (here, the Plan Committee) to a trustee are contemplated in ERISA. *See e.g.*, 29 U.S.C § 1103(a)(1) (trustees can be "subject to proper directions of [another] fiduciary which are made in accordance with the terms of the plan.").

Account"); *id.* § 16.6 ("The Committee shall … direct the Trustee to pay the amount from the Forfeiture Account.").

With this context in mind, the meaning of "Forfeiture Account amounts shall be utilized to pay reasonable administrative expenses of the Plan and to restore Accounts for a Plan Year, as directed by the Committee" is clear. The term "shall be utilized" establishes an obligation to "pay reasonable administrative expenses of the Plan and to restore Accounts for a Plan Year." The phrase "as directed by the Committee," on the other hand, establishes *who* must issue instructions to the Trustee to make those payments—here, the Plan Committee. In other words, the Plan Committee must "direct" the Trustee to "pay reasonable administrative expenses." This obligation is not discretionary. If it were, the "shall be utilized" language would be rendered superfluous. That cannot be the case. *Hess*, 274 F.3d at 462.

In sum, the phrase "Forfeiture Account amounts shall be utilized to pay reasonable administrative expenses of the Plan and to restore Accounts for a Plan Year, as directed by the Committee" in Section 8.4 of the Plan Document mandates the Plan Committee to first utilize forfeitures to pay reasonable administrative expenses before offsetting Grainger's employer contributions. Therefore, Plaintiffs' allegation that the Plan Committee failed to do so, [1] ¶¶ 48–59, sufficiently alleges a failure to follow the language of the Plan Document.

The final argument made by Defendants is that Section 14.5 of the Plan Document gives the Plan Committee discretion to interpret the Plan. [19] at 6. And because Defendants contend their interpretation of Section 8.4 is plausible, the Plan

Committee's decision to skip Step 1 was not a breach of fiduciary duty. *Id.* As an initial matter, this argument was not presented in Defendants' opening brief and so the Court cannot consider it. *Eberhardt v. Walsh*, 122 F.4th 681, 687 n.4 (7th Cir. 2024). In addition, it is unpersuasive. A court should defer to a plan administrator's interpretation of "plan's governing instruments unless arbitrary and capricious." *Bator v. Dist. Council 4*, 972 F.3d 924, 929 (7th Cir. 2020). An interpretation is not "arbitrary and capricious if it falls within the range of reasonable interpretations" or if it is "compatible with the language and the structure of the plan document." *Id.* (citations omitted). An interpretation that defies a plan's "plain language," however, is arbitrary and capricious. *Id.* Here, the "plain language" of the Plan Document does not permit the Plan Committee to skip Step 1. The Plan Committee's decision to do so, therefore, cannot be given deference.

### b. Count II (Duty of Loyalty)

The duty of loyalty "requires a plan fiduciary to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries,' with 'the exclusive purpose' of 'providing benefits to participants and their beneficiaries' and 'defraying reasonable expenses of administering the plan.'" *Albert v. Oshkosh Corp.*, 47 F.4th 570, 582 (7th Cir. 2022) (quoting 29 U.S.C. § 1104(a)(1)(A)). "Among other things, the duty of loyalty requires the fiduciary to deal fairly and honestly with beneficiaries … so as to ensure that a plan receives all funds to which it is entitled." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 696 (2025) (internal citations and quotations omitted).

Defendants assert that Plaintiffs do not plausibly allege that the Plan Committee breached its duty of loyalty. [12] at 8–11; [19] at 6–9. Defendants' argument relies heavily on a growing number of district court decisions[3] rejecting forfeiture fiduciary breach claims. *Id*. Those decisions—which primarily hinge on the reasoning from *Hutchins I* and *II*—were all based on plan document language that gave the defendant fiduciaries *discretion* as to how to allocate forfeitures. *See e.g., Hutchins II*, 767 F. Supp. 3d at 922 ("the company retains discretion over whether to pay Plan

---

[3]Defendants cite *McWashington v. Nordstrom, Inc.*, No. C24-1230 TSZ, 2025 WL 1736765 (W.D. Wash. June 23, 2025); *Matula v. Wells Fargo & Co.*, No. CV 24-3703 (JRT/DJF), 2025 WL 1707878 (D. Minn. June 18, 2025); *Wright v. JPMorgan Chase & Co*, No. 2:25-CV-00525-JLS-JC, 2025 WL 1683642 (C.D. Cal. June 13, 2025); *Steen v. Sonoco Prods. Co.*, No. 4:24-CV-03105-JD, 2025 WL 2420725 (D.S.C. June 4, 2025); *Bozzini v. Ferguson Enters. LLC*, No. 22-CV-05667-AMO, 2025 WL 1547617 (N.D. Cal. May 29, 2025); *Madrigal v. Kaiser Found. Health Plan, Inc.*, No. 2:24-CV-05191-MRA-JC, 2025 WL 1299002 (C.D. Cal. May 2, 2025); *Sievert v. Knight-Swift Transportation Holdings, Inc.*, 780 F. Supp. 3d 870, 876 (D. Ariz. 2025); *Barragan v. Honeywell Int'l Inc.*, No. 24CV4529 (EP) (JRA), 2024 WL 5165330 (D.N.J. Dec. 19, 2024); *Dimou I*; *Hutchins v. HP Inc.* ("*Hutchins II*"), 767 F. Supp. 3d 912 (N.D. Cal. 2025); and *Naylor v. BAE Sys., Inc.*, No. 1:24-CV-00536 (AJT/WEF), 2024 WL 4112322 (E.D. Va. Sept. 5, 2024) in their briefing. [12] at n.5.

Defendants' notices of supplemental authority [22], [23], and [28] cite *Dimou v. Thermo Fisher Sci. Inc.* ("*Dimou II*"), 2025 WL 2611240 (S.D. Cal. Sept. 9, 2025); *Estay v. Ochsner Clinic Found.*, No. CV 25-507, 2025 WL 2644782 (E.D. La. Sept. 15, 2025); *Armenta v. WillScot Mobile Mini Holdings Corp.*, No. CV-25-00407-PHX-MTL, 2025 WL 2645518 (D. Ariz. Sept. 15, 2025); *Polanco v. WPP Grp. USA, Inc.*, No. 24-CV-9548 (JGK), 2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025); *Del Bosque v. Coca-Cola Sw. Beverages* LLC, No. 3:25-CV-01270-X, 2025 WL 3171326 (N.D. Tex. Nov. 13, 2025); *Hernandez v. AT&T Servs., Inc.*, No. 2:25-CV-00676-ODW (PVCX), 2025 WL 3208360 (C.D. Cal. Nov. 14, 2025); *Brown v. Peco Foods, Inc.*, No. 3:25-CV-491-TSL-RPM, 2025 WL 3210857 (S.D. Miss. Nov. 14, 2025); *Garner v. Northrop Grumman Corp., No.* 1:25-CV-00439 (AJT/WEF), 2025 WL 3488657 (E.D. Va. Dec. 4, 2025*); Brewer v. All. Coal, LLC*, No. 24-CV-0406-CVE-SH, 2025 WL 3527171 (N.D. Okla. Dec. 9, 2025); and *Donelson v. Meijer Inc.*, No. 1:25-CV-1156, 2025 WL 3754241 (W.D. Mich. Dec. 29, 2025).

expenses out of the Plan trust"); *Dimou II*, 2025 WL 2611240, at *6 (the "Plan documents themselves … state that the company retains discretion over how to utilize forfeitures."). In view of this discretion, those district courts held that a fiduciary does not breach its duty of loyalty by discretionarily choosing to apply forfeitures to employer contributions rather than to pay administrative costs. *See e.g.*, *Polanco*, 2025 WL 3003060, at *7 ("a fiduciary does not breach the duty of loyalty merely by exercising discretion expressly granted to it by the Plan document to deny participants a gratuity that the Plan document does not guarantee."). Holding otherwise, the district courts reasoned, would "stretch the fiduciary duties of loyalty and prudence beyond the law and to create benefits beyond what was promised in the Plan itself," *Hutchins II*, 767 F. Supp. 3d at 923, and "would impose categorical liability any time a fiduciary chooses to [discretionarily] use forfeitures to reduce its own contributions." *Peco Foods*, 2025 WL 3210857, at *7 (citation omitted). This "broad reach" made the plaintiffs' theories in those cases implausible. *Hutchins I*, 737 F. Supp. 3d at 862.

These considerations are not present here. Unlike the cases cited by Defendants, Section 8.4 of the Plan Document does not give discretion as to how the Plan Committee can allocate forfeitures. It instead mandates the Plan Committee to utilize forfeitures to pay reasonable administrative expenses (Step 1) before offsetting employer contributions (Step 2). *See Wright*, 2025 WL 1683642, at *5 (noting the theory advanced in "*Hutchins* and its progeny" is "meaningfully different" from cases where plaintiffs "alleged that the defendants' use of forfeitures violated the express

terms of the plans at issue."). The duty of loyalty, therefore, is not being "stretched" to create an additional benefit. Rather, the Plan Document is structured to guarantee Plan participants the benefit of covering administrative expenses via forfeitures in the first instance. Put differently, present here is a promised benefit to Plan participants. In view of this "context," *Hutchins I*, 737 F. Supp. 3d at 862, Plaintiffs' allegation that the Plan Committee skipped Step 1 and went straight to Step 2 plausibly alleges that the Plan Committee did not in fact act "for the exclusive purpose of … providing benefits to participants and their beneficiaries" but instead put Grainger's interests first. 29 U.S.C. § 1104(a)(1). This is sufficient to allege a breach of the duty of loyalty. *Hutchins II*, 767 F. Supp. 3d at 922 ("an ERISA fiduciary's duty is to ensure that all participants have received the full benefit guaranteed to them by the plan documents."); *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 ("ERISA ... seek[s] to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits.").

Defendants nevertheless maintain that a long history of Treasury Department regulations—including 26 C.F.R. § 1.401-7(a) and Use of Forfeitures in Qualified Retirement Plans, 88 FR 12282-01 (proposed Feb. 27, 2023)—permitting the use of forfeitures to offset company contributions make Plaintiffs' claim for breach of the duty of loyalty implausible. [12] at 8–9. Those Treasury Department regulations, however, are not binding on this matter. *Hutchins I*, 737 F. Supp. 3d at 859 (explaining that 26 C.F.R. § 1.401-7 "do[es] not extend to profit-sharing and stock

bonus plans")[4] (citing Rev. Rul. 71-313, 1971-2 C.B. 203 (1971)); *Perez-Cruet v. Qualcomm Inc.*, No. 23-CV-1890-BEN (MMP), 2024 WL 2702207, at *7 (S.D. Cal. May 24, 2024) (the proposed February 27, 2023 Treasury Department regulation "has no force of law.")[5]. Nor are they incompatible with Plaintiffs' claim. As explained by the *Hutchins I* court, "[t]he Treasury Department and Congress have long understood that forfeitures in defined contribution plans 'could be reallocated to the remaining participants under a nondiscriminatory formula, used to reduce future employer contributions, or used to offset administrative expenses of the plan.'" 737 F. Supp. 3d at 863 (quoting Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. at 12283). The use of "or" indicates not all options need to be pursued. As such, a plan document that restricts a fiduciary to one of the three options (or, like here, requires a fiduciary to pursue one option before pursuing another) does not conflict with this understanding.

To be sure, the Court recognizes Defendants' point that, in some situations, allocating forfeitures to offset Grainger's employer contributions instead of paying reasonable administrative expenses (*i.e.*, skipping Step 1) is in the best interests of

---

[4]The Plan Document states that "The Plan is intended to constitute a qualified profit sharing plan." [13-2] at Preamble.

[5]Plaintiffs' response brief also references Definitions of Qualified Matching Contributions and Qualified Nonelective Contributions, 83 Fed. Reg. 34469 (July 20, 2018) ("in the common case of a plan that provides that forfeitures will be used to pay plan expenses incurred during a plan year and that any remaining forfeitures in the plan at the end of the plan year will be allocated pursuant to a specified formula…"). [17] at 11. It is unclear to the Court why Plaintiffs mention this regulation, as it does not appear to be referenced in Defendants' opening brief. Regardless, this Treasury regulation relates only to qualified matching contributions ("QMACs") and qualified nonelective contributions ("QNECs"), neither of which are at issue here.

Plan participants (and thus not a breach of the duty of loyalty). [12] at 11; *see also* [13-3] at 21 (the Department of Labor noting the same). Plaintiffs recognize this possibility too. [17] at 12. Such a decision would, of course, violate Section 8.4 of the Plan Document. But if the decision was truly in the best interests of the Plan and its participants, it would trump those obligations. *Urlaub v. CITGO Petroleum Corp.*, 750 F. Supp. 3d 863, 876 (N.D. Ill. 2024) ("when an ERISA fiduciary's duty … conflicts with the terms of a plan document, 'the duty [] trumps the instructions of a plan document.'") (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014)).

Whether this situation occurred in the present case, however, is unfit for resolution at this stage in the proceedings. "Only obvious alternative explanations must be overcome at the pleadings stage." *Hughes v. Nw. Univ.*, 63 F.4th 615, 629 (7th Cir. 2023). "[W]hether a claim survives dismissal necessarily depends on the strength or obviousness of the alternative explanation that the defendant provides." *Id*. The only alternative explanation offered by Defendants for the Plan Committee's conduct is that "requiring the Committee to use the forfeitures to pay for the Plan's administrative expenses would have potentially jeopardized the participants' contractually promised benefits." [12] at 11 (internal quotations omitted). While this alternative explanation warrants further inquiry during discovery, it is not obvious at this point. Nor is it clear what "contractually promised benefits" were "jeopardized" or why prioritization of those benefits over the contractual benefits conferred on Plan participants by Section 8.4 was in the best interests of Plan participants.

In short, a finding that the Plan Committee's decision to allocate forfeitures to offset Grainger's employer contributions was in the best interests of Plan and its participants necessarily involves a factual investigation. On a motion to dismiss, a court "must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). And the reasonable inference drawn here is that the Plan Committee's decision to ignore Section 8.4's contractual promise to offset reasonable administrative expenses via forfeitures was not in the best interests of the Plan and its participants. Defendants, of course, are free to challenge this after further factual development. But at this stage, this is enough to allege a plausible claim for breach of the duty of loyalty.

### c.  Count III (Duty of Prudence)

The duty of prudence requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (citing 29 U.S.C. § 1104(a)(1)(B)). "To plead a breach of the duty of prudence under ERISA, a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness," which will "depend on the circumstances prevailing at the time the fiduciary acts." *Hughes*, 63 F.4th at 630 (cleaned up).

Defendants assert that Plaintiffs do not plausibly allege that the Plan Committee breached its duty of prudence. [12] at 8–11; [19] at 6–10. In support, Defendants again rely on the same Treasury Department regulation and "stretching" of fiduciary duty

arguments asserted with respect to the duty of loyalty. *Id.* For the reasons explained, the Court finds those arguments unpersuasive. *Supra* § III.B.i.2.b.

Defendants make two additional arguments. They first contend that Plaintiffs are essentially alleging that it was *per se* imprudent for the Plan Committee to use forfeitures to offset company contributions and therefore ignore the "context specific considerations" required during a prudence inquiry. [12] at 10; [19] at 9. Plaintiffs' allegations, however, do give context: the Plan Document mandates that forfeitures must first be applied toward reasonable administrative expenses before being used to reduce Grainger's employer contributions. [1] ¶¶ 58, 64 72, 79. By failing to consider the effect of this benefit when deciding to allocate forfeitures to offset Grainger's contributions, the Plan Committee was imprudent. *Id.* ¶¶ 39, 112, 113. And while Defendants propose alternative, prudent explanations for the Plan Committee's conduct, including concerns about timely receipt of contributions and reliance on widely-adopted Treasury regulations permitting allocation of forfeitures to company contributions, [19] at 9–10, none of these are sufficiently "obvious" to compel the Court at this stage to conclude that the Plan Committee acted prudently. *Hughes*, 63 F.4th at 629. Rather, the only obvious alternative explanation for the Plan Committee's conduct would be if Grainger had an inability to satisfy its matching contributions. [1] ¶¶ 66, 67. But Plaintiffs allege that this was not the case. *Id.*

Defendants also contend that Plaintiffs' prudence allegations are conclusory and do not raise a reasonable inference that the Plan Committee is liable for the misconduct alleged. [12] at 9; [19] at 10. The Court disagrees. Within the context

alleged, Plaintiffs have raised a plausible inference that the Plan Committee used an imprudent and flawed process in determining how forfeitures would be allocated. [1] ¶¶ 39, 72, 79, 112, 113. While additional details about the Plan Committee's process would be better, "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen*, 835 F.3d at 678. And here there is a plausible story that the Plan Committee's actions violated the duty of prudence.

Because Plaintiffs have plausibly pled that the Plan Committee's actions breached their fiduciary duties, the Court declines to dismiss Counts I–III on this basis.

### 3. The Plan Committee's Breach Harmed the Plan

Defendants finally argue that Plaintiffs have not plausibly alleged any loss to the Plan. [12] at 11; [19] at 11. Plaintiffs do not address this point in their response brief, [17], so Defendants contend that Plaintiffs waived any argument to the contrary. [19] at 11. Defendants, however, cannot simply rely on waiver to prevail. Defendants still bear the burden on a motion to dismiss and must persuasively demonstrate that Plaintiffs have failed to state a claim. *Cline v. FitzMark Chicago, Inc.*, No. 21 CV 04253, 2023 WL 2711615, at *8 (N.D. Ill. Mar. 30, 2023); *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

Defendants base their position on two interrelated points. They first argue that Plaintiffs do not allege that they ever received less in contributions than provided for by the Plan. [12] at 11. Defendants then assert that ERISA does not require a company to make additional contributions each time an employee separates and

forfeits unvested benefits. *Id*. Viewed together, Defendants essentially contend that no harm flowed from the Plan Committee's decision not to prioritize paying reasonable administrative expenses because Grainger made all its required employer contributions to the Plan between 2019 to 2023. This argument misconstrues Plaintiffs' Complaint. Plaintiffs do not allege a right to receive additional employer contributions from Grainger. They instead allege that the "deduction of Plan expenses from the participants' accounts reduces the funds available to participants for distribution and/or investing" thereby "depriv[ing] the Plan of funds that otherwise would have been earned on the amounts deducted." [1] ¶ 70. In other words, Plaintiffs challenge not Grainger's contribution levels but a decrease in funds held by the Plan due to administrative expense payments. And this decrease, Plaintiffs allege, flowed directly from the Plan Committee's failure to follow Section 8.4 of the Plan Document. *Id*. ¶¶ 58–59.

An example might work best here. Say the Plan held $100 of non-forfeited funds and $20 in forfeitures in 2019. And say that in 2019, Grainger was required to make $50 in employer contributions and there was $10 in reasonable administrative expenses. If the Plan Committee utilized forfeitures to pay reasonable administrative expenses before offsetting Grainger's contributions, the result would be $150 in non-forfeited funds left over ($20 - $10 = $10. $100 + $10 + $(50-10) = $150). But if the Plan Committee just utilized forfeitures to offset Grainger's contributions, the result would be $140 in non-forfeited funds left over ($100 - $10 = $90. $90 + $20 + $(50-20) = $140). A $50 "net" contribution occurs in both scenarios, yet the Plan is left with

$10 less in the latter. Whether this is characterized as a decrease in Plan funds ($140 versus $150) or a reduction in Grainger's portion of the net contributions ($(50-20 = 30) versus $(50-10 = 40)) is semantic. Mathematically, the Plan loses in the second scenario.

Because Plaintiffs have plausibly pled that the Plan Committee's actions harmed the Plan, the Court declines to dismiss Counts I-III on this basis.

### ii. Counts IV and V (Prohibited Transactions)

In Counts IV and V, Plaintiffs allege that the Plan Committee engaged in prohibited transactions under 29 U.S.C. § 1106(a) (between a plan and a party in interest) and 1106(b) (between a plan and a fiduciary). ERISA regulates the conduct of plan fiduciaries, "placing certain transactions outside the scope of their lawful authority." *Spink*, 517 U.S. at 888. To sufficiently allege a violation of 29 U.S.C. § 1106, an ERISA plaintiff must identify a "transaction." 29 U.S.C. § 1106; *Spink*, 517 U.S. at 888.

Defendants argue that Plaintiffs fail to allege a violation of 29 U.S.C. § 1106(a) and 1106(b) because they have not identified any "transaction" within the meaning of 29 U.S.C. § 1106.[6] [12] at 13–14. The Court agrees. The reasoning in *Buescher v. N. Am. Lighting, Inc.,* 791 F. Supp. 3d 873 (C.D. Ill. 2025) is particularly helpful on this issue. As the *Buescher* court explained, "[t]he prohibited transaction rules focus

---

[6]Defendants also contend that allocating forfeitures to participants through contributions is not "prohibited." [12] at 14–15. Because the Court finds that Counts IV and V fail to allege a "transaction" within the meaning of 29 U.S.C. § 1106, the Court does not address this argument.

primarily on the relationship between the benefit plan and other parties to a transaction, and the section prohibits transactions where those dealing with the plan may have conflicting interests which could lead to self-dealing." *Id.* at 897 (quoting *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984)). "Thus, as most commonly understood, transactions tend to involve multiple parties and some sort of exchange between them." *Id.* (citing *Transaction*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/transaction).

Plaintiffs do not allege any facts indicating that forfeitures were exchanged with another party. Instead, the Complaint establishes that forfeitures remained in the Plan and were simply shifted to other employees in the form of contributions. [1] ¶¶ 20, 37–39, 63, 77, 118, 124. Movement of funds within a plan "does not fit neatly within the plain meaning of 'transaction.'" *Buescher,* 791 F. Supp. 3d at 897. Nor does movement of funds inside a plan clearly fall within the types of "transactions" prohibited by 29 U.S.C. § 1106. *Spink*, 517 U.S. at 892-93 (explaining that Section 1106 is directed to "commercial bargains" such as leasing, sales, exchanges of property, money lending, credit extensions, and furnishing goods and services, which put plan funds at risk if they are not conducted at arm's length). *See also McWashington*, 2025 WL 1736765, at *16 ("When, as here, the forfeited funds have not been withdrawn from the Plan, but rather redistributed among participants' accounts, the type of self-dealing transaction that animated the enactment of ERISA § 406(b)(1) is not present.").

Finally, though not by itself decisive, the Court notes that Plaintiffs' prohibited transaction theory yields absurd implications. Plaintiffs acknowledge that once reasonable administrative expenses are paid, the Plan Committee can use forfeitures to offset Grainger's employer contributions. [1] ¶ 46. Yet Counts IV and V would characterize this conduct as a prohibited transaction. *Id*. ¶¶ 118, 123. In fact, Plaintiffs' theory seems to classify *any* intra-plan transfer of funds to offset employer contributions—even if expressly permitted in a plan—as a violation of 29 U.S.C. § 1106. The broad reach of Plaintiffs' theory is untenable. *O'Kane v. Apfel*, 224 F.3d 686, 691 (7th Cir. 2000) ("When construing statutes, courts should 'avoid absurd and unjust consequences.'") (quoting *Grebe v. Wheeler Catering Co. (In re Andrews)*, 172 F.2d 996, 999 (7th Cir.1949)); *see also Buescher*, 791 F. Supp. 3d at 897 (noting that "[a] broader view of 'transactions,' under which any moving of funds within a plan qualifies, would no longer 'supplement,' but fully subsume the fiduciary duties" contemplated under 29 U.S.C. § 1104).

For the reasons above, the Court dismisses Plaintiffs' prohibited transaction claims. Because the problem with Counts IV and V is legal, and not factual, in nature, the Court concludes that amendment would be futile. Thus, dismissal of Counts IV and V is with prejudice.

### iii. Count VI (Failure to Monitor)

In Count VI, Plaintiffs allege that Grainger failed to adequately monitor the individuals responsible for the allocation of forfeitures on the Plan Committee to ensure that they were adequately performing their fiduciary obligations. [1] ¶¶ 127–

133. "Individuals who appoint ERISA fiduciaries have a duty to monitor those fiduciaries' actions and to provide them with the information necessary to carry out their responsibilities." *Bartnett v. Abbott Lab'ys, No.* 20-CV-02127, 2021 WL 428820, at *5 (N.D. Ill. Feb. 8, 2021*) (quoting *Brieger v. Tellabs, Inc.*, 629 F. Supp. 2d 848, 867 (N.D. Ill. 2009)). This duty requires, according to the Department of Labor, reviewing "the performance of trustees and other fiduciaries" at "reasonable intervals" and "in such [a] manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and the statutory standards, and satisfied the needs of the plan." *Id.* (quoting 29 C.F.R. § 2509.75–8 at FR–17 (Department of Labor questions and answers)).

Defendants bring two challenges to Count VI. They first note that failure to monitor claims are derivative and therefore must be dismissed where the underlying fiduciary duty claims fail. [12] at 15. While Defendants are correct on the law, *Albert*, 47 F.4th at 583, this argument is inapplicable here as the underlying fiduciary breach claims have survived dismissal.

Defendants alternatively argue that Plaintiffs' failure to monitor claim should be dismissed because the Complaint lacks any factual allegations plausibly demonstrating a failure to monitor. [12] at 15. Plaintiffs do not address this point in their response to Defendants' motion to dismiss, [17] at 15, so Defendants contend that Plaintiffs have waived any argument to the contrary. [19] at 12. Again, Defendants cannot just rely on waiver to prevail and still bear the burden to demonstrate the Complaint's insufficiency. *Cline*, 2023 WL 2711615, at *8; *Marcure*,

29

992 F.3d at 631. Like before, Defendants fail to meet this burden. The Complaint alleges that Grainger "fail[ed] to monitor and evaluate the performance of individuals responsible for allocation of Plan forfeitures on the Plan Committee or have a system in place for doing so," "fail[ed] to investigate the proper use of Plan forfeitures," and "fail[ed] to remove individuals responsible for Plan forfeitures on the Plan Committee whose performance was inadequate." [1] ¶ 131. Contrary to Defendants' assertions, these allegations are not conclusory but factually descriptive and plausibly allege that Grainger failed to use their supervisory authority over the Plan Committee to stop the Plan Committee from using forfeitures to offset Grainger's employer contributions in violation of Section 8.4. True, additional specifics regarding Grainger's monitoring process would have been better. But the Court cannot fault Plaintiffs for not pleading information that they do not have. *Allen*, 835 F.3d at 678. At this stage, these allegations are sufficient to state a failure to monitor claim. *Lucero v. Credit Union Ret. Plan Ass'n*, No. 22-CV-208-JDP, 2023 WL 2424787, at *5 (W.D. Wis. Mar. 9, 2023) (finding similar allegations sufficient to survive dismissal).

Because Plaintiffs plausibly allege that Grainger failed to monitor the Plan Committee, the Court declines to dismiss Count VI on this basis.

## IV.   Conclusion

For the stated reasons, Defendants' Motion to Dismiss [11] is granted in part. Counts IV and V are dismissed with prejudice. Counts I, II, III, and VI survive. In person status set for February 4, 2026 at 9:30 AM.

30

E N T E R :

Dated: January 26, 2026

_____

MARY M. ROWLAND
United States District Judge