**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ADRIANNE GARDNER-KEEGAN, SCOTT A. NORMAN, and ALISON DELA RIVA, individually, and as Representatives of a Class of Participants and Beneficiaries of the W.W. Grainger, Inc. Retirement Savings Plan,<br><br>Plaintiffs,<br><br>vs.<br><br>W.W. GRAINGER, INC., BOARD OF DIRECTORS OF W.W. GRAINGER, INC., and W.W. GRAINGER, INC. PROFIT SHARING INVESTMENT COMMITTEE,<br><br>Defendants. | Case No. 1:25-cv-05233<br><br>Honorable Mary M. Rowland |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**INTRODUCTION**

This case concerns Plaintiffs' challenge to the use of forfeitures under the W.W. Grainger, Inc. Retirement Savings Plan (the "Plan") to offset Grainger's employer contributions instead of first using them to pay reasonable administrative expenses of the Plan. Plaintiffs obtained a motion-to-dismiss ruling allowing their fiduciary-breach claims to proceed, and the Parties later negotiated a $2,850,000 cash settlement after reviewing more than 2,000 pages of forfeiture-related documents and participating in mediation. The proposed Settlement converts that litigation progress into a funded recovery for the Plan's participants and beneficiaries while avoiding the expense, delay, and remaining risks of establishing liability and recoverable losses.

Plaintiffs request preliminary approval, certification of a settlement-only class under Rule 23(b)(1), approval of the proposed notices and allocation for notice purposes, appointment of Class Counsel and a Settlement Administrator, and a final-approval schedule. The Settlement Agreement, executed as of October 23, 2026, is Exhibit 1 to the Declaration of Paul M. Secunda ("Secunda Decl."). Its notices appear as Exhibits A-1, A-2, and B; the Plan of Allocation as Exhibit C; proposed preliminary and final orders as Exhibits D and E; the CAFA Notice as Exhibit F; and the Parties' agreed-upon Protective Order as Exhibit G.

The Settlement provides automatic distributions without claim forms, email notice with postal fallback, Court review of all requested fees and Case Contribution Awards, and a preference for further distributions before residual funds may be used solely for Plan expenses that would otherwise be borne by Plan participants. It releases the Released Claims described in Section 2.38 of the Settlement Agreement as to the Released Parties described in Section 2.39 of the Settlement Agreement, subject to the Settlement Agreement's definitions and exclusions. The requested relief is preliminary; Class Members will receive notice and an opportunity to object before final approval.

## BACKGROUND

### I. PLEADINGS, MOTION PRACTICE, AND SETTLEMENT NEGOTIATIONS

Plaintiffs Adrianne Gardner-Keegan, Scott A. Norman, and Alison Dela Riva filed this Action on May 12, 2025, alleging that fiduciaries used forfeitures to reduce Grainger's contributions rather than first pay reasonable Plan administrative expenses. The Complaint asserted fiduciary-breach, prohibited-transaction, and monitoring claims. The Board of Directors was dismissed without prejudice on June 30, 2025, after the Parties filed a stipulation of dismissal on June 26, 2025. W.W. Grainger, Inc. ("Grainger") and the W.W. Grainger, Inc. Profit Sharing

Investment Committee (the "Committee") remain the captioned Defendants. Settlement Agreement Art. 1; Secunda Decl. ¶ 12.

On January 26, 2026, the Court dismissed the prohibited-transaction claims, Counts IV and V, with prejudice and allowed Counts I, II, III, and VI to proceed. ECF No. 32 at 31. The Court interpreted Plan Section 8.4 as requiring the use of forfeitures for reasonable administrative expenses before employer-contribution offsets. *Id.* at 15. The Court allowed the fiduciary-breach claims to proceed to discovery. It did not fix liability or damages based on an evidentiary record.

The Court stayed proceedings on March 9, 2026, after the Parties' March 6 request. Defendants produced more than 2,000 pages of discovery concerning forfeiture amounts and allocation practices while settlement discussions were pending. The Parties mediated in person before an experienced, neutral mediator, Robert A. Meyer, on July 28, 2026, reached an agreement in principle on August 4, and notified the Court on August 10, 2026. They then negotiated the detailed Settlement Agreement and exhibits. Settlement Agreement Art. 1; Secunda Decl. ¶¶ 14–17 & Ex. 2.

## II. MATERIAL SETTLEMENT TERMS

The proposed Settlement Class consists of: All persons who participated in the W.W. Grainger, Inc. Retirement Savings Plan at any time from May 12, 2019, through the date of entry of the Preliminary Approval Order, inclusive, including any Beneficiary of a deceased person who participated during that period and any Alternate Payee of a person subject to a QDRO who participated during that period.

The Settlement Class is estimated to exceed 30,000 members, making joinder impracticable. Secunda Decl. ¶ 4. The Class is proposed under Rule 23(b)(1), without opt-out rights, but with an opportunity to object.

Defendants will fund $2,850,000 in two installments: $100,000 within thirty calendar days after the later of the entry of the Preliminary Approval Order or establishment of the Qualified Settlement Fund and provision of the necessary account information, and $2,750,000 within twenty-one calendar days after the Settlement Effective Date, subject to receipt of the required account information. Settlement Agreement §§ 5.4–5.5. The Settlement Effective Date follows finality of the Final Approval Order, absent termination under Article 13.

The Gross Settlement Amount pays Court-approved attorneys' fees of no more than $950,000, litigation costs and expenses of no more than $60,000, and Case Contribution Awards of no more than $10,000 per Class Representative. Assuming those maximum amounts are awarded, $1,810,000 of the Gross Settlement Amount would remain before deduction of Settlement Administrative Expenses, including applicable taxes, and any reserve established under the Settlement Agreement, and before accounting for earnings on the Settlement Fund. The amount available for the initial distribution will depend on those additional deductions and the amounts ultimately approved by the Court. Settlement Agreement Art. 2, Arts. 6–7; Secunda Decl. ¶ 6.

Exhibit C allocates the Net Settlement Amount by summing quarterly account balances, beginning with the April–June 2019 quarter and ending with the quarter or portion thereof within the Class Period through preliminary approval. Class eligibility begins May 12, 2019. No individualized daily or partial-quarter proration applies. The method provides a consistent fallback for unavailable records and avoids duplicate Beneficiary or Alternate Payee allocations. No claim form is required. Eligible Active Accounts receive credits; eligible persons without Active Accounts receive checks. Initial non-Active-Account allocations of $5 or less before withholding are excluded and redistributed. Post-calculation account closures receive checks without a new

minimum exclusion. Section 6.3 governs the Escrow Agent's ninety-day disbursement obligation; subsequent account crediting follows Exhibit C. Secunda Decl. ¶¶ 8–9.

Checks expire after 180 days, with address research, appropriate reissuance, and reminders beforehand. A second distribution goes pro rata to initial recipients if economically feasible. Following the applicable check expirations and reconciliation, residual funds go to the Plan solely for administrative fees and expenses otherwise charged to participants. Exhibit C addresses residual timing following either one or two distributions. Secunda Decl. ¶ 10.

The release is governed by Settlement Agreement § 2.38 and Article 8. Sections 2.38.1–2.38.2 cover the claims asserted in the Action and claims connected with the same factual predicate, based on conduct from May 12, 2019, through the date of the Final Approval Order. The same-factual-predicate limitation applies to all eight categories in § 2.38.2. Sections 2.38.3–2.38.7 separately address preclusion, settlement allocation and administration, Independent Fiduciary approval, and tax-related claims, with the stated exceptions for claims against the Settlement Administrator or Independent Fiduciary alone. Section 2.38.8 preserves the vested-benefit claims specified there. The release and covenant not to sue become effective on the Settlement Effective Date. The full Settlement Agreement supplies the operative scope. Secunda Decl. ¶ 3.

Section 8.5 separately restricts each Class Representative's voluntary counseling, assistance, encouragement, or cooperation concerning Released Claims, except when compelled by valid subpoena, court order, or operation of law. It expressly permits voluntary truthful communications to government agencies and to other attorneys assisting with claims outside the scope of Released Claims. Truthful communications permitted by § 8.5 do not violate § 8.2. This

exception does not provide blanket permission for voluntary assistance to private counsel concerning Released Claims. Secunda Decl. ¶ 33.

Defendants will select an Independent Fiduciary after consultation with Class Counsel. The Independent Fiduciary will assess authorization on the Plan's behalf under the conditions of PTE 2003-39, as amended, and issue its written determination at least thirty calendar days before the Final Approval Hearing. Settlement Agreement §§ 3.2, 12.4. That contractual review supplements the Court's Rule 23 review; it does not replace it.

## ARGUMENT

### I. RULE 23 REQUIRES LIKELY APPROVAL AND LIKELY CERTIFICATION

Rule 23(e)(1)(B) requires sufficient information to show that the Court will likely be able both to approve the proposal under Rule 23(e)(2) and to certify the class for judgment. Final approval follows notice and a hearing. The Rule 23(e)(2) inquiry addresses adequate representation, arm's-length negotiation, adequacy of relief in light of litigation risks and costs, distribution effectiveness, fees and connected agreements, and equitable treatment among class members.

The Seventh Circuit likewise places particular weight on the strength of the case compared with the settlement recovery, while considering the likely expense and duration of litigation, counsel's assessment, the developed record, and class reaction. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863–64 (7th Cir. 2014). Class reaction cannot be measured until notice. Plaintiffs therefore seek a preliminary assessment on the present evidence, followed by a final assessment informed by notice, objections, and the Independent Fiduciary's review.

## II. THE SETTLEMENT SATISFIES THE PRELIMINARY FAIRNESS INQUIRY

### A. Plaintiffs and counsel have adequately represented the Class

Plaintiffs challenge a common forfeiture-allocation practice and seek restoration of Plan losses, aligning their interests with the Class. Their declarations address their participation, assistance, and understanding of their representative duties. Secunda Decl. ¶ 20; Class Representative Decls. ¶¶ 2–6. They receive allocations under the same methodology as other Class Members; any Case Contribution Award must be separately justified and approved.

Counsel's experience combines extensive ERISA litigation with scholarship and public service in employee benefits law. Secunda Decl. ¶¶ 21–27. Counsel litigated the dismissal motion, evaluated the produced documents, and negotiated a cash recovery and detailed distribution protections. This record supports adequate representation under Rule 23(e)(2)(A), as well as appointment under Rule 23(g).

### B. Informed negotiations produced the Settlement Agreement

The Parties negotiated after contested motion practice and document production, with assistance from an experienced neutral mediator. The July mediation was followed by further negotiations before the August agreement in principle. Secunda Decl. ¶¶ 15–17. Those circumstances support an informed, adversarial process. In *Wong*, the Seventh Circuit recognized the significance of meaningful access to information and mediated negotiations even without completed formal discovery. 773 F.3d at 864. Plaintiffs do not ask the Court to treat mediation as a substitute for examining the actual terms.

### C. The recovery accounts for the merits and remaining risks

The $2,850,000 recovery must be evaluated against what the Class could reasonably obtain through continued litigation. Plaintiffs estimate recoverable losses at approximately $14.25

million, based principally on Defendants' Vanguard forfeiture-account statements, crediting administrative expenses demonstrably paid from forfeitures, and including claimed lost investment earnings through the first quarter of 2026. The $2.85 million gross settlement represents approximately 20% of those estimated losses. Secunda Decl. ¶ 7. That comparison distinguishes the asserted loss from the total amount of forfeitures and identifies any claimed lost earnings rather than assuming all employer offsets were recoverable damages.

The Court's interpretation of Plan Section 8.4 was the basis for its ruling allowing Plaintiffs' fiduciary-breach claims to proceed to discovery. Further litigation would require proof of relevant allocations, available forfeitures, expenses that should have been offset, causation, the recoverable period, and loss amounts. The Court also left factual questions concerning the challenged forfeiture allocation practices and their context for further development. ECF No. 32 at 21–22. The surviving claims therefore retained litigation risk despite the pleading-stage success. Secunda Decl. ¶¶ 7, 13–19.

Continued proceedings would impose additional discovery, expert, motion, trial, and potential appellate costs before a recovery became payable. Settlement secures cash on a defined funding schedule and avoids those further deductions and delay. Plaintiffs rely on that concrete exchange, supported by their valuation evidence, rather than attributing an assumed value to a prospective amendment that the Settlement Agreement does not require. *Synfuel* calls for a meaningful comparison of the recovery with the case's value, not an unsupported assertion that any mediated amount suffices. 463 F.3d at 653–54.

### D. Automatic distribution and residual protections benefit the Class

The proposed method avoids a claim-submission requirement and uses records maintained for Plan administration. The distributions are intended to constitute restorative payments within

Revenue Ruling 2002-45 to the extent applicable under Section 6.4 of the Settlement Agreement; the Settlement Agreement does not guarantee a particular tax result. Account credits and checks implement the payment methods for eligible persons with and without Active Accounts, respectively. Address updates, returned-notice follow-up, check reminders, and reissuance support actual delivery. The low $5 exclusion applies only at the initial calculation for persons without Active Accounts; excluded amounts increase the remaining allocations. Exhibit C.

The residual provision prefers a second distribution when economically feasible and restricts any ultimate Plan payment to participant-borne expenses. Undistributed amounts do *not* revert to Grainger; any residual amount for which a further distribution is not economically feasible shall be paid to the Plan solely for the purpose of defraying administrative fees and expenses of the Plan that would otherwise be charged to Plan participants. Article 13 of the Settlement Agreement separately governs the return of remaining funds if the Settlement is terminated. These features allow the Court to assess actual class relief rather than relying only on a gross-fund headline.

If the Settlement terminates, reasonable and documented Settlement Administrative Expenses incurred or irrevocably committed before termination are paid first from interest earned on the Qualified Settlement Fund, with reasonable efforts to cancel outstanding commitments and mitigate expenses. Responsibility for excess expenses turns on the cause of termination. Under Sections 13.3.1–13.3.2 of the Settlement Agreement, Defendants or Class Counsel, respectively, bear all excess expenses when termination results from the specified withdrawal without contractual cause, material breach, fraud, gross negligence, or willful misconduct by Defendants or Plaintiffs. In other circumstances, Class Counsel pays the lesser of one-half of excess expenses or $100,000, and Defendants pay the balance. The $100,000 cap does not apply to Class Counsel's

responsibility under Section 13.3.2. No individual Class Representative has personal liability for these expenses. Settlement Agreement § 13.3; Secunda Decl. ¶ 32.

**E. Fees and representative awards remain subject to independent review**

Class Counsel intends to seek no more than one-third of the Gross Settlement Amount, plus actual reasonable litigation costs and expenses within the $60,000 cap, and up to $10,000 in Case Contribution Awards per Class Representative. Those ceilings are disclosed, not presented as findings of reasonableness. The later Rule 23(h) application will supply the evidentiary and legal basis for the requested amounts. It will be filed at least forty-five days before the Final Approval Hearing, before the thirty-day objection deadline, and posted on the Settlement Website. Settlement Agreement §§ 4.1, 7.1–7.2; Ex. D.

Payment timing is also disclosed: after the second installment, approved fees and costs are payable within twenty-eight calendar days of the Settlement Effective Date; approved Case Contribution Awards are payable no later than the same deadline. The Escrow Agent must disburse the Net Settlement Amount within ninety calendar days following the Settlement Effective Date; subsequent account crediting follows Exhibit C, with initial distributions within that period where reasonably feasible. Settlement Agreement §§ 6.2–6.3. The Settlement Effective Date follows finality, and Class Counsel must refund payments as specified if the award or Settlement is later reversed or modified. A denial or reduction of fees or Case Contribution Awards does not terminate the Settlement. *Id.* §§ 6.2.1, 13.4. Thus, the Court retains authority to protect the Class's recovery without undoing the negotiated Gross Settlement Amount.

**F. Connected agreements and allocation receive express scrutiny**

The Settlement Agreement and its exhibits are the only agreements made in connection with the proposal; there are no additional written or oral side agreements. Secunda Decl. ¶ 18. This

disclosure addresses Rule 23(e)(3) based on counsel's knowledge of the actual agreements, rather than relying solely on the Settlement Agreement's integration clause.

A uniform quarterly account-balance method, consistent fallback for unavailable records, and Beneficiary and QDRO tracing govern allocations. The Settlement Administrator may correct errors and make routine implementation adjustments within that method. Amendments to eligibility, weighting, minimum payments, or residual disposition remain subject to Section 15.9's approval requirements. *See* Exhibit C.

Quarterly account-balance measurements provide a practical approximation for distributing a compromise recovery arising from administrative expenses allegedly charged to participants instead of paid from forfeitures. The method avoids reconstructing individual daily balances and fee histories. It does not calculate actual individual losses or assume all administrative charges were asset-based. Secunda Decl. ¶ 8.

Exhibit C uses period-end balances where reasonably available and the last reasonably available positive balance for accounts fully distributed before a measurement date. Opening and closing quarters are not prorated. The method remains an approximation subject to Rule 23(e)(2)(D), including because some fees were charged per participant. ECF No. 32 at 7; Secunda Decl. ¶ 8.

## III. THE NOTICE PROGRAM AND SCHEDULE SHOULD BE APPROVED

Rules 23(c)(2)(A) and 23(e)(1) govern notice to this proposed Rule 23(b)(1) class. The Settlement Administrator will email each Class Member for whom a valid email address is reasonably available and send the Short Form Postcard Settlement Notice by first-class U.S. mail to each Class Member for whom no valid email address is reasonably available or whose Email Settlement Notice is returned as undeliverable or otherwise results in a delivery-failure

notification. Returned postcards prompt commercially reasonable address research and one additional mailing if an updated address is located. Settlement Agreement § 3.5. Individual notice, supported by the Settlement Website and access to counsel, is reasonably calculated to reach persons whose rights will be affected.

The notices explain the allegations, recovery and deductions, allocation, release, binding effect, absence of opt-out rights, and objection and hearing procedures. Exhibits A-1, A-2, B. They direct Class Members to the full Settlement Agreement and the Plan of Allocation. The Settlement Administrator will publish the Settlement Website within thirty days after preliminary approval; identifying data are due within twenty-one days; initial notice is due within thirty days after receipt of the information reasonably necessary to send notice. Exhibit D.

The requested schedule sets the Final Approval Hearing no earlier than 120 calendar days after filing this motion and, independently, no earlier than ninety days after service on the appropriate officials under 28 U.S.C. § 1715(d). The CAFA Notice must be served within ten calendar days after filing. Approval of the template does not dispense with the statutory contents, state-by-state information, actual service, or proof of compliance. Settlement Agreement §§ 3.3.6, 3.6; Ex. F.

Final-approval and fee papers are due forty-five days before the Final Approval Hearing, objections thirty days before it, and notices of intent to appear thirty days before it. General reply papers are due twenty-one days before the Final Approval Hearing, with responses to Class Member objections permitted seven days before it. The Court retains control over further notice if a material modification affects Class rights.

## IV. THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR SETTLEMENT CERTIFICATION

Settlement does not excuse compliance with Rule 23(a) and an appropriate Rule 23(b) category. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Nor does the ERISA label establish certification automatically. *See Spano v. Boeing Co.*, 633 F.3d 574, 583–86 (7th Cir. 2011). Here, the proposed class concerns a single Plan, a defined period, and the challenged use of forfeitures.

### A. Rule 23(a) and Rule 23(g) are satisfied

**Numerosity**. The Settlement Class is estimated to exceed 30,000 members, making joinder impracticable. Secunda Decl. ¶ 4. Their identities can be established from Plan records, and the Class Period ends on the date of the Preliminary Approval Order rather than extending indefinitely to future participants.

**Commonality**. The shared questions include what Plan Section 8.4 required, whether the Committee followed that sequence, whether the challenged allocations complied with fiduciary duties, whether Grainger fulfilled its monitoring duties, and what losses the Plan sustained. Their resolution turns on common Plan provisions and allocation conduct. *See Neil v. Zell*, 275 F.R.D. 256, 260–61 (N.D. Ill. 2011).

**Typicality**. Each Class Representative challenges the same use of forfeitures and seeks restoration of losses under the same fiduciary-duty theory. Their claims do not depend on a different investment choice or a distinct alleged practice. Their participation and claimed fee injury are documented in their declarations. Class Representative Decls. ¶¶ 2–3. Differences in account balances across quarterly measurements affect allocation but do not themselves change the challenged conduct.

**Adequacy**. Plaintiffs' declarations address their work, understanding of their duties, and absence of known conflicts. *Id.* ¶¶ 4–6; Secunda Decl. ¶ 20. Plaintiffs seek recovery for the Plan

based on the same challenged forfeiture practices and receive settlement allocations under the same methodology as other eligible Class Members. Any Case Contribution Awards remain subject to separate justification and Court approval.

The proposed Settlement Class includes persons who participated in the Plan from May 12, 2019, through the date of the Preliminary Approval Order, together with the Beneficiaries and Alternate Payees specified in the Settlement Agreement. That cutoff permits identification of the Class before notice. Exhibit C's quarterly measurement conventions do not change the Class Period. The substantive release in Sections 2.38.1–2.38.2 extends through the date of the Final Approval Order and is governed by the same-factual-predicate limitation described above. That endpoint does not establish that the challenged conduct occurred continuously through final approval. The loss estimate includes claimed earnings through the first quarter of 2026; the existence and amount of any additional losses during the later release period remain part of the valuation uncertainty. The separate preclusion and settlement-related release provisions in Sections 2.38.3–2.38.7 remain applicable. Secunda Decl. ¶¶ 3, 7.

Counsel's investigation, litigation experience, knowledge of ERISA, and commitment of resources satisfy the factors in Rule 23(g)(1)(A). Secunda Decl. ¶¶ 15, 21–27. Plaintiffs accordingly request appointment of Walcheske & Luzi, LLC as Class Counsel.

### B. Rule 23(b)(1) fits the Plan-wide fiduciary claims

Plaintiffs seek relief for the Plan under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2). Separate adjudications of the same fiduciary conduct and Plan losses could practically determine or impair other participants' interests in that recovery, supporting Rule 23(b)(1)(B). Separate directives concerning the same forfeiture pool and required allocation sequence could also subject fiduciaries to incompatible standards, supporting Rule 23(b)(1)(A). The

rationale is the effect of adjudication on common fiduciary administration and Plan recovery, not merely the possibility of different individual damages awards.

*Neil* recognizes the suitability of representative ERISA fiduciary-breach claims for Rule 23(b)(1) treatment. 275 F.R.D. at 267–68. This case challenges a common forfeiture-allocation practice rather than seeking certification merely because individuals hold accounts in the same plan. Certification will apply only for settlement purposes, and all Class Members retain the right to object to the Settlement. Settlement Agreement § 3.1. The Court should therefore find that certification for judgment is likely and direct the proposed notice.

## CONCLUSION

Plaintiffs respectfully request preliminary approval of the $2,850,000 Settlement; settlement-only certification under Rules 23(a) and 23(b)(1); appointment of Plaintiffs as Class Representatives, Walcheske & Luzi, LLC as Class Counsel, and Analytics Consulting LLC as Settlement Administrator; approval of the notices, notice program, and proposed allocation for notice purposes; approval of the CAFA template subject to actual statutory compliance; and entry of the accompanying proposed Preliminary Approval Order setting the Final Approval Hearing and related deadlines.

Dated: October 23, 2026

Respectfully submitted,

**WALCHESKE & LUZI, LLC**

*/s/ Paul M. Secunda*
Paul M. Secunda
1200 N. Mayfair Road, Suite 270
Wauwatosa, WI 53226
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

*Attorneys for Plaintiffs and the Proposed Settlement Class*