**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ADRIANNE GARDNER-KEEGAN, SCOTT A. NORMAN, and ALISON DELA RIVA, individually, and as Representatives of a Class of Participants and Beneficiaries of the W.W. Grainger, Inc. Retirement Savings Plan,<br><br>Plaintiffs,<br><br>vs.<br><br>W.W. GRAINGER, INC., BOARD OF DIRECTORS OF W.W. GRAINGER, INC., and W.W. GRAINGER, INC. PROFIT SHARING INVESTMENT COMMITTEE,<br><br>Defendants. | Case No. 1:25-cv-05233<br><br>Honorable Mary M. Rowland |

**DECLARATION OF PAUL M. SECUNDA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Paul M. Secunda, declare as follows:

1. I am an attorney with Walcheske & Luzi, LLC and counsel of record for Plaintiffs Adrianne Gardner-Keegan, Scott A. Norman, and Alison Dela Riva in this Action. I submit this declaration in support of their motion for preliminary approval. Except where I identify another basis, the facts stated here are within my personal knowledge.

**SETTLEMENT TERMS**

2. Attached as Exhibit 1 is a true and correct copy of the fully executed Class Action Settlement Agreement, executed as of October 23, 2026 (the "Settlement Agreement"), including

Exhibits A-1, A-2, and B through G. The Settlement Agreement resolves claims concerning the use of forfeitures in the W.W. Grainger, Inc. Retirement Savings Plan (the "Plan").

3. The proposed Settlement Class is defined as follows: All persons who participated in the Plan at any time during the Class Period—May 12, 2019, through the date of entry of the Preliminary Approval Order, inclusive—including any Beneficiary of a deceased Person who participated in the Plan during that period and any Alternate Payee of a Person subject to a QDRO who participated in the Plan during that period. This definition permits the Settlement Class to be identified before notice is distributed. Under Sections 2.38.1–2.38.2 of the Settlement Agreement, the Released Claims include claims asserted in the Action and claims arising out of or connected with the same factual predicate, based on conduct occurring from May 12, 2019, through the date of the Final Approval Order. Sections 2.38.3–2.38.7 separately address preclusion and settlement-related claims, and Section 2.38.8 preserves the vested-benefit claims described there. The release becomes effective on the Settlement Effective Date, as provided in Article 8 and defined in Section 2.45. These dates define the Class Period and the scope of the Released Claims; they do not constitute a finding concerning the duration of any alleged conduct.

4. Based on my review of the Plan's 2025 Form 5500, I estimate that the Settlement Class includes more than 30,000 members. The filing reports 30,824 participants with account balances at the end of the 2025 plan year. This figure represents a single-year-end snapshot rather than an unduplicated count of all persons who participated during the Class Period. The Settlement Class is therefore expected to be larger, as it also encompasses qualifying former participants who fully distributed their accounts before that date and qualifying participants who joined afterward. The precise number of Settlement Class Members will be determined from the Plan's records in connection with preparation of the settlement notice list following preliminary approval.

5. Defendants (or their successors-in-interest, insurer, or representative) will cause $2,850,000 to be deposited into the Qualified Settlement Fund. An initial $100,000 installment is due within thirty (30) calendar days after the later of (a) entry of the Preliminary Approval Order or (b) establishment of the Qualified Settlement Fund and delivery to Defendants and/or Defense Counsel of the required account information. The remaining $2,750,000 is due within twenty-one (21) calendar days after the Settlement Effective Date, subject to delivery of the Qualified Settlement Fund name, IRS W-9 Form, and necessary wiring instructions. Settlement Agreement §§ 5.4–5.5.

6. Counsel may request up to $950,000 in attorneys' fees, up to $60,000 in reasonable litigation expenses, and up to $10,000 for each of the three Class Representatives. All requested fees and awards require Court approval and will be paid from the Gross Settlement Amount. If the maximum amounts are awarded, $1,810,000 of the Gross Settlement Amount would remain before deduction of Settlement Administrative Expenses and any contingency reserve and other deductions included in the calculation of the Net Settlement Amount. The actual Net Settlement Amount will depend on the amounts approved, the Settlement Administrative Expenses incurred, and the other deductions specified in Section 2.29 of the Settlement Agreement. Settlement Agreement §§ 2.6, 2.11, 2.26, 2.29, and Art. 7.

7. Plaintiffs estimate their potential recoverable losses at approximately $14.25 million, based principally on Defendants' Vanguard forfeiture-account statements, crediting administrative expenses demonstrably paid from forfeitures, and including estimated lost investment earnings through the first quarter of 2026. The $2.85 million Gross Settlement Amount represents approximately 20% of that estimate. The comparison remains subject to the risks and uncertainties of continued litigation, such as whether the developed factual record would establish

breaches of fiduciary duty, including whether particular forfeiture decisions involved fiduciary conduct rather than settlor functions; whether Plaintiffs could establish that the challenged allocations caused the claimed participant losses; and whether Defendants would prevail on their interpretation of the governing Plan provisions on appeal. The amount recoverable would also depend on the treatment of disputed expenses, including Project Cube expenses, any additional substantiated offsets, and the methodology and assumptions used to calculate lost investment earnings. These uncertainties, together with the need for expert analysis and the costs and delay of continued litigation, informed my assessment of the Settlement.

8. The proposed allocation sums quarterly account balances, beginning with the April–June 2019 quarter and ending with the quarter or portion thereof within the Class Period through preliminary approval. Class eligibility remains governed by the Class Period beginning May 12, 2019. Period-end balances are used where reasonably available, including for accounts opened during a quarter. For accounts fully distributed before a measurement date, the last reasonably available positive balance before full distribution is used. Opening and closing quarters are not prorated. The method provides a consistent fallback for unavailable records and prohibits duplicate counting of Beneficiary and Alternate Payee interests. The asserted losses arise from administrative expenses that Plaintiffs contend should have been paid from forfeitures rather than participants' accounts. I consider this method a reasonable approximation for allocating a compromise recovery, taking into account its common measurement approach and the cost of reconstructing individual daily balances and fee histories. It does not calculate each participant's actual fee charges or recoverable losses or assume every administrative expense was assessed as a percentage of account balance. Settlement Agreement Ex. C.

9. No claim form is required. Under the Plan of Allocation, eligible Class Members with an Active Account at the time of calculation of the Final Entitlement Amount will receive allocations to their Plan accounts, except that a person whose account closes after calculation will receive payment by check, without application of a new minimum-payment exclusion. Former Participants and Beneficiaries or Alternate Payees without Active Accounts whose Preliminary Entitlement Amount is $5.00 or less before tax withholding will receive no payment, and those amounts will be reallocated among eligible recipients. Under Section 6.3, Class Counsel will direct the Escrow Agent to disburse the Net Settlement Amount within ninety (90) calendar days following the Settlement Effective Date. Subsequent crediting to individual Plan accounts will be performed by the Recordkeeper or Authorized Administrator under the Plan of Allocation, with initial distributions within ninety (90) calendar days where reasonably feasible. The Settlement Administrator will provide the allocation information at least ten (10) business days before the applicable account distribution, as provided in Exhibit C. Settlement Agreement §§ 2.2, 2.25, 6.3; Ex. C.

10. Checks expire 180 days after issuance. The Settlement Administrator must undertake commercially reasonable efforts to locate recipients of returned checks, reissue checks where appropriate, and remind recipients of outstanding checks before expiration. A second distribution will be made pro rata to initial recipients if economically feasible. The residual-transfer timing applies following the applicable distribution, whether there is one distribution or a second distribution, and accounts for expiration of outstanding checks, if any, and reconciliation of remaining obligations, including the fourteen-calendar-day interval specified in Exhibit C. Residual amounts will be paid to the Plan solely to defray administrative fees and expenses that would otherwise be charged to Plan participants. Settlement Agreement § 6.6; Ex. C.

11. The Settlement does not require a prospective amendment of the Plan's forfeiture provisions or impose a prospective practice change. My assessment of the consideration does not assign a monetary value to any amendment or practice change that the Settlement does not require. The restrictions on residual settlement funds are part of the distribution arrangements in Exhibit C.

**CASE PROCEEDINGS AND SETTLEMENT NEGOTIATIONS**

12. Plaintiffs filed the Complaint on May 12, 2025. The W.W. Grainger, Inc. Board of Directors was dismissed without prejudice on June 30, 2025, following the parties' June 26 stipulation. W.W. Grainger, Inc. ("Grainger") and the W.W. Grainger, Inc. Profit Sharing Investment Committee (the "Committee") moved to dismiss on July 18, 2025, and the parties fully briefed the motion and submitted supplemental authorities. Settlement Agreement §§ 1.1–1.3.

13. On January 26, 2026, the Court granted in part and denied in part Defendants' motion to dismiss, dismissing Counts IV and V with prejudice and permitting Counts I, II, III, and VI to proceed to discovery. ECF No. 32. The Court's order did not determine an amount of recoverable loss or enter judgment on the surviving claims.

14. The parties sought a stay on March 6, 2026, and the Court granted the request on March 9, 2026. While settlement discussions were pending, Defendants produced more than 2,000 pages relating to forfeiture amounts and the allocation process to facilitate those discussions. Settlement Agreement §§ 1.5–1.6.

15. My colleagues and I reviewed the production and evaluated it in light of the pleadings and the Court's  order. Our review included analysis of the quarterly Vanguard forfeiture-account statements and records concerning administrative expenses and the use of forfeitures. We refined Plaintiffs' damages calculations to credit administrative expenses

demonstrably paid from forfeitures and evaluated the remaining disputes concerning additional offsets and the characterization of Project Cube expenses. We also assessed the governing Plan language, the Court's interpretation of Section 8.4, and the factual and legal issues that would remain for discovery, expert analysis, and adjudication if litigation continued. This investigation informed Plaintiffs' mediation submission and our evaluation of the proposed Settlement.

16. The parties participated in an in-person mediation on July 28, 2026, before Robert A. Meyer, an experienced mediator of complex and ERISA class actions. A copy of his professional biography is attached as Exhibit 2. The parties continued negotiating and reached a settlement in principle on August 4, 2026. They notified the Court on August 10, 2026, and thereafter negotiated the detailed Settlement Agreement and exhibits. Settlement Agreement § 1.7.

17. The Settlement resulted from arm's-length negotiations between counsel for parties with opposing interests, assisted by experienced neutral mediator Robert A. Meyer. Following the in-person mediation on July 28, 2026, the parties reached an agreement in principle on August 4, 2026. The Settlement provides for a $2,850,000 Gross Settlement Amount to be deposited into the Qualified Settlement Fund. Any Attorneys' Fees and Costs and Case Contribution Awards will be subject to Court approval and paid from the Gross Settlement Amount, together with Settlement Administrative Expenses as provided in the Settlement Agreement.

18. For purposes of Rule 23(e)(3), the Settlement Agreement and its exhibits constitute the only agreements made in connection with the proposed Settlement. There are no separate written or oral agreements concerning the proposal, including any side agreements concerning Attorneys' Fees and Costs, litigation costs and expenses, Class Representatives' Case

Contribution Awards, or other consideration. This representation is based on my knowledge of the parties' actual agreements and not solely on the integration clause in Article 15.

19. Based on my evaluation of the evidence, the Court's motion to dismiss ruling, the remaining disputes, the expense and delay of further litigation, and the distribution terms, I believe the Settlement is fair, reasonable, and adequate. Continued litigation would require further fact development and potentially expert analysis, dispositive motions, trial, and appeal, with no assurance of recovery or its amount.

**REPRESENTATION OF THE CLASS**

20. Plaintiffs assert claims relating to the Plan's forfeitures on behalf of the Plan and the proposed Settlement Class. Each Plaintiff participated in the Plan during the Class Period and incurred administrative expenses charged to that Plaintiff's account that Plaintiffs contend should have been paid from available forfeitures. Each has assisted counsel in prosecuting the Action, remained informed of material developments, and reviewed and approved the proposed Settlement. Based on my communications with Plaintiffs and my work in this Action, I am not aware of any conflicts between Plaintiffs and the proposed Settlement Class concerning the claims or the proposed Settlement. Each Class Representative's declaration provides that person's account of participation and service. Any Case Contribution Award will be sought separately and supported by evidence of the work performed.

21. I have been actively engaged in legal practice since 1998 and spent eighteen years in legal academia focusing on workplace and employee benefits law. Since joining Walcheske & Luzi in May 2020, my practice has focused primarily on ERISA class action litigation. I am licensed in Wisconsin and admitted to practice in this Court.

22. My ERISA litigation experience includes retirement-plan cases against healthcare institutions and other employers, including Bronson Healthcare, Froedtert Health, ThedaCare, Mercy Health, Kimberly-Clark, Quad/Graphics, Costco, and General Dynamics. The firm's attorneys and I have brought more than sixty retirement-plan cases.

23. Representative matters include *Bangalore v. Froedtert Health, Inc.*, No. 2:20-cv-00893-PP (E.D. Wis.); *Hughes v. Mercy Health Corp.*, No. 3:20-cv-50286 (N.D. Ill.); *Gleason v. Bronson Healthcare*, No. 1:21-cv-00379 (W.D. Mich.); *Seidner v. Kimberly-Clark Corp.*, No. 3:21-cv-00867-L (N.D. Tex.); and *Hanson v. General Dynamics*, No. 0:21-cv-00988-PAM-ECW (D. Minn.).

24. I served as a tenured Professor of Law at Marquette University Law School after joining its faculty in 2008 and previously taught at the University of Mississippi School of Law from 2002 through 2008. My scholarship includes sixteen law review articles, two book chapters, and three books on employee benefit plan topics, and more than seventy articles and shorter works on workplace law and related subjects overall.

25. I received my law degree, magna cum laude, from Georgetown University Law Center in 1997 and my B.A., cum laude, from Harvard College in 1993. I clerked for Judge Murray M. Schwartz of the United States District Court for the District of Delaware in 1997–1998 and practiced labor and employment law, including ERISA litigation, with Philadelphia law firms from 1998 to 2002.

26. I am an elected Fellow of the American College of Employee Benefits Counsel and of the American Bar Foundation, a Senior Fulbright Scholar, and an elected member of the American Law Institute. I served on the United States Department of Labor's ERISA Advisory

Council from 2013 through 2015 and chaired the Council in 2015. During that service, I helped prepare reports addressing employee benefits issues, including retirement-plan fees.

27. Walcheske & Luzi represents employees and has substantial class and collective action experience. The firm has served as lead counsel or co-counsel in numerous such matters. We will commit the attorney time and other resources necessary to seek approval and implement the Settlement, including responding to Class Member inquiries, reviewing administration, and enforcing the Settlement Agreement if necessary.

**SETTLEMENT ADMINISTRATION AND NOTICE**

28. Class Counsel proposes that Analytics Consulting LLC serve as Settlement Administrator, subject to the Court's approval. Analytics' qualifications and experience in settlement administration are described in its firm profile, attached as Exhibit 3. Class Counsel requests that Analytics administer the Settlement in accordance with the Settlement Agreement, the Plan of Allocation, and the Court's orders. The Settlement Agreement identifies Analytics Consulting LLC as the Settlement Administrator and states that Class Counsel selected the Settlement Administrator and Defendants have not objected. Settlement Agreement §§ 2.42, 6.1.1.

29. The Settlement Administrator will transmit the Email Settlement Notice when a valid email address is reasonably available. If no valid email address is reasonably available, or if the Email Settlement Notice is returned as undeliverable or generates a delivery-failure notification, the Settlement Administrator will send the Short Form Postcard Settlement Notice by first-class U.S. mail. If a postcard is returned, the Settlement Administrator will use commercially reasonable efforts to locate an updated address and will re-mail the postcard one additional time if an updated address is found. The Email Settlement Notice, Short Form Postcard Settlement Notice,

Long Form Settlement Notice, Settlement Agreement, Plan of Allocation, and other required materials will be posted on the Settlement Website. Settlement Agreement §§ 3.5.1–3.5.4, 14.2.

30. Defendants will retain an Independent Fiduciary after consultation with Class Counsel. The Independent Fiduciary's written determination approving or disapproving the Settlement is due at least thirty (30) calendar days before the Final Approval Hearing. Reasonable and documented fees are payable from the Qualified Settlement Fund. Settlement Agreement §§ 3.2, 12.4. This declaration does not represent that the Independent Fiduciary has already approved the Settlement.

31. Class Counsel will file the motion for entry of the Final Approval Order and the application for Attorneys' Fees and Costs and Case Contribution Awards at least forty-five (45) calendar days before the Final Approval Hearing. The proposed schedule permits objections and notices of intent to participate to be filed until thirty (30) calendar days before the hearing, general reply papers to be filed until twenty-one (21) calendar days before the hearing, and responses to objections to be filed at least seven (7) calendar days before the hearing. Counsel will provide the Court with evidence of notice and CAFA compliance before final approval. Settlement Agreement §§ 3.3.6–3.3.11, 4.1, and 7.2.

32. If the Settlement terminates, reasonable and documented Settlement Administrative Expenses incurred or irrevocably committed before termination are paid first from interest earned on the Qualified Settlement Fund, with reasonable efforts to cancel outstanding commitments and mitigate expenses. Responsibility for Excess Settlement Administrative Expenses turns on the cause of termination. Under Sections 13.3.1–13.3.2, Defendants or Class Counsel, respectively, bear all such expenses when termination results from the specified voluntary withdrawal without contractual cause, material breach, fraud, gross negligence, or

willful misconduct by Defendants or Plaintiffs, respectively. In other circumstances, Class Counsel pays the lesser of one-half of the Excess Settlement Administrative Expenses or $100,000, and Defendants pay the balance. The $100,000 cap does not apply to Class Counsel's responsibility under Section 13.3.2. No individual Class Representative has personal liability for these expenses. Settlement Agreement § 13.3.

33. Section 8.5 separately restricts each Class Representative's voluntary counseling, assistance, encouragement, or cooperation concerning the Released Claims, except when compelled by valid subpoena, court order, or operation of law. It expressly permits voluntary truthful communications to government agencies and voluntary truthful communications to other attorneys assisting with claims that do not fall within the scope of the Released Claims. Communications permitted by Section 8.5 do not violate Section 8.2. This exception does not provide blanket permission for voluntary assistance to private counsel concerning Released Claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 23, 2026

*/s/ Paul M. Secunda*
Paul M. Secunda